# STATE OF MICHIGAN

# COURT OF APPEALS

FIFTH THIRD BANK,

        Plaintiff-Appellee,

TRIANGLE ASSOCIATES, INC.,

        Defendant-Appellant.

UNPUBLISHED
October 29, 2015

No. 321737
Kent Circuit Court
LC No. 13-004365-CZ

Before: TALBOT, C.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendant, Triangle Associates, Inc. (Triangle), appeals as of right the April 28, 2014 order granting summary disposition to plaintiff, Fifth Third Bank (Fifth Third Bank), in this declaratory action. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The procedural history of this case is as long as it is complicated, and reads like a law school student's Civil Procedure exam nightmare. In 2008, Triangle obtained a judgment against Bentwaters Partners (Bentwaters) in the amount of $430,465.96. Bentwaters had a deposit (checking) account with Fifth Third Bank (the Bentwaters Account). In August 2011, Fifth Third Bank, Bentwaters, and the United States Department of Agriculture (USDA) entered into a deposit account control agreement (DACA), in which Bentwaters granted the USDA a security interest in the Bentwaters Account.

## A. WRIT OF GARNISHMENT AND DEFAULT JUDGMENT

In what provided the spark for a series of litigation, Triangle sought and received from the clerk of the Kent Circuit Court a writ of garnishment against Fifth Third Bank in June 2012. The writ of garnishment was served on Fifth Third Bank the following day. Fifth Third Bank placed a hold on the funds and notified Bentwaters of the writ, but it did not deliver a verified disclosure within 14 days of receiving the writ, as is required by MCR 3.101(H). As a result, on June 26, 2012, the clerk of the Kent Circuit Court entered a default against Fifth Third Bank, at Triangle's request. The following day, the circuit court entered a default judgment "[f]or" Triangle, "[a]gainst" Fifth Third Bank, in the amount of $484,550.40. That same day, Fifth Third Bank delivered its garnishee disclosure form.

-1-

Fifth Third Bank moved the circuit court to set aside the default on July 16, 2012, arguing that there was good cause for its delay and that it had a meritorious defense, i.e., it was precluded from making any distributions under the writ of garnishment because the USDA had a security interest in the Bentwaters Account. The circuit court denied the motion, as well as a subsequent motion for reconsideration.

In November 2012, Fifth Third Bank filed two motions for relief from the default judgment, the second of which is pertinent to this appeal. In the second motion for relief from judgment, Fifth Third Bank argued that the default judgment should be vacated because of noncompliance with the court rules regarding default judgments. The circuit court denied the motion, expressing satisfaction that "everything was done properly under the court rules . . . ." As will be discussed in more detail below, this Court subsequently granted Fifth Third Bank's application for leave to appeal the denial of this second motion for relief from judgment.

## B. INTERPLEADER ACTION

On September 5, 2012, Fifth Third Bank filed an interpleader action in Kent Circuit Court to resolve what it described as competing interests in the Bentwaters Account. It identified the USDA, Triangle, and Mercantile Bank[1] as parties with competing interests in the account. Thereafter, the USDA removed the interpleader action to federal court in the United States District Court for the Western District of Michigan (district court). Triangle moved the district court to dismiss the action based on a number of grounds, including res judicata, collateral estoppel, waiver, and unclean hands. In evaluating the motion for dismissal, the district court examined the nature of the default judgment that Triangle obtained against Fifth Third Bank. Triangle argued that, upon entry of the default judgment, the writ of garnishment obtained against Fifth Third Bank merged with the default judgment and ceased to operate as to the funds in the Bentwaters Account. In other words, Triangle argued that Fifth Third Bank was liable to pay Triangle its own assets, regardless of any assets held on behalf of Bentwaters, in order to satisfy the default judgment.

The district court rejected the notion that Fifth Third Bank was liable to pay Triangle out of its own assets. It stated MCL 600.4051 expressly provides for circumstances when a garnishee may become personally liable. Those circumstances—when a garnishee knowingly and willfully answers falsely upon disclosure or examination—were not present in this case. The district court explained that the default judgment was entered against Fifth Third Bank because it failed to timely file its verified disclosure; thus, the default judgment was entered against Fifth Third Bank without regard to anything disclosed by it. The district court also denied Triangle's motion for summary judgment.

Thereafter, Bentwaters argued that the USDA was entitled to summary judgment, argued that the funds in the Bentwaters Account should be awarded to the USDA because the USDA's security interest was superior to the claims of Mercantile Bank and Triangle. Triangle argued that it did not have a claim to the funds to the Bentwaters Account because the default judgment was a personal judgment against Fifth Third Bank. Triangle also argued that the federal court lacked the ability to discharge Fifth Third Bank from liability in excess of the funds in the Bentwaters Account. The

---

[1] The details of Mercantile Bank's claims to the funds in the Bentwaters Account are not pertinent to this appeal; consequently, we do not discuss Mercantile Bank in any detail.

district court found that the USDA had a security interest in the funds in the Bentwaters Account, and that this security interest had priority over the claims of Mercantile Bank and Triangle. As a result, it granted the motion for summary judgment.

In addition, the court reiterated its belief that Fifth Third Bank was not personally liable to pay the default judgment. However, the court reasoned that it was unnecessary to rehash Triangle's argument that the default judgment constituted a personal judgment against Fifth Third Bank because Fifth Third Bank did not seek a discharge of liability with respect to anything outside the funds in the Bentwaters Account, and its judgment would not affect Fifth Third Bank's liability outside those funds. In accordance with the district court's ruling, Fifth Third Bank tendered a check in the amount of $486,235.40 to the district court. The court then discharged Fifth Third Bank from all liability with respect to the Bentwaters Account.

## C. DECLARATORY ACTION—THE INSTANT PROCEEDINGS

On May 9, 2013, the day after tendering the funds to the district court, Fifth Third Bank initiated the instant action by filing a complaint for declaratory relief in the trial court.[2] Fifth Third Bank alleged that in the course of all the proceedings between it and Triangle, a controversy had arisen regarding whether it was personally liable to Triangle under the default judgment. Fifth Third Bank believed that Triangle would attempt to execute the default judgment against its personal assets. According to Fifth Third Bank, the parties needed a declaratory judgment to guide their action with respect to the default judgment. It asked the trial court to declare that: (1) the default judgment gave Triangle an interest in the Bentwaters Account; (2) Triangle's interest in the Bentwaters Account was adjudicated in the interpleader action as being inferior to the USDA's security interest; (3) Fifth Third Bank, upon complying with the judgment of the federal court, had no further obligations under the default judgment; (4) Fifth Third Bank was not personally liable to Triangle under the default judgment; and (5) Triangle may not execute or enforce the default judgment against Fifth Third Bank's assets or proceed against an appeal bond Fifth Third Bank had filed earlier in conjunction with one of its applications for leave to appeal the circuit court's earlier rulings in regard to the default judgment.

Fifth Third Bank moved for summary disposition in March 2014. It argued that a garnishee is generally only liable for the property of the defendant in a garnishment action. Only when a garnishee knowingly and willfully answers falsely upon disclosure or examination, contended Fifth Third Bank, can a garnishee be liable to satisfy a judgment out of its own assets. Those circumstances were not present in this case because the default judgment was entered *before* Fifth Third Bank ever filed a disclosure. Thus, Fifth Third Bank argued it was only liable for the funds in the Bentwaters account, and this liability had been discharged in the interpleader action.

Triangle filed a cross-motion for summary disposition, arguing that Fifth Third Bank brought the action for declaratory relief as an improper collateral attack on the default judgment. Triangle also argued that the trial court did not have subject-matter jurisdiction over the action, which it characterized as an attack on judgments entered by the circuit court and the district court. As a third

---

[2] In order to avoid confusion amongst the various courts involved in this case, we use the term "trial court" to refer only to the trial court in the instant action.

reason for positing that it was entitled to summary disposition, Triangle contended that the action was precluded by res judicata, arguing that the issue of Fifth Third Bank's personal liability had already been decided on the merits by the default judgment. Further, Triangle argued that the trial court should decline to issue declaratory relief in the instant case because the district court lacked subject-matter jurisdiction in the interpleader action.

In a written opinion and order entered April 28, 2014, the trial court granted summary disposition to Fifth Third Bank and denied Triangle's cross-motion for the same. Citing MCR 3.101(G)(1), the trial court reasoned that "a garnishee is generally liable only for the property belonging to the defendant in the garnishee's possession or control." Although an exception to that general rule exists under MCL 600.4051 if a garnishee knowingly and willfully answers falsely in its disclosures, the trial court noted that a false disclosure was never at issue in this case. Finally, the trial court found that the district court discharged Fifth Third Bank from liability with respect to the Bentwaters Account, and that it had no further obligations thereunder. Thus, it had completed its performance as garnishee under the default judgment. The trial court rejected Triangle's assertions that it lacked jurisdiction to grant declaratory relief, and declared the following: (1) the default judgment was not a personal money judgment against Fifth Third Bank and Fifth Third Bank was only liable for Bentwaters's property and was not liable to pay out of its own assets; (2) Fifth Third Bank had fully performed its obligations under the default judgment in accordance with the appeal bond and had no further obligations to perform; (3) Fifth Third Bank was not in contempt of the circuit court's orders for complying with the orders entered by the federal court in the interpleader action; and (4) Triangle may not execute or enforce the default judgment against Fifth Third Bank's personal assets or against the appeal bond. It is from this order that Triangle now appeals as of right.

## D. APPLICATION FOR LEAVE TO APPEAL IN DOCKET NO. 313726

At this point in the recitation of the facts, we take a brief chronological detour to give account of the appellate proceedings concerning the default judgment. While the instant case was pending in the trial court, this Court granted Fifth Third Bank's application for leave to appeal the circuit court's order denying its second motion for relief from judgment. *Triangle Assoc, Inc v Bentwaters Partners LP*, unpublished order of the Court of Appeals, entered October 18, 2013 (Docket No. 313726). This Court held oral argument on the matter on May 7, 2014, which was after the trial court granted summary disposition to Fifth Third Bank in the instant case and declared that Fifth Third Bank was not personally liable to pay the default judgment.

On June 26, 2014, this Court issued an unpublished per curiam opinion in which it found the issue raised moot and remanded the matter to the circuit court for entry of an order of dismissal. *Triangle Associates, Inc v Bentwaters Partners, LLP*, unpublished opinion per curiam of the Court of Appeals, issued June 26, 2014 (Docket No. 313726) (the *Triangle* opinion), at 1, 3.[3] After setting forth the procedural history of the case, the panel stated that "[t]hough the events of the past few months have radically altered each party's position," the appeal "remain[ed] limited to 'the issues raised in the application and supporting brief,' namely Fifth Third's contention that the [circuit]

---

[3] Although the *Triangle* opinion is not part of the lower court record in this case, we take judicial notice of the opinion. See *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

-4-

court" did not comply with the court rules. *Id.* at 2. The panel found that the issue was moot, explaining that:

> Whatever relief Fifth Third sought . . . was granted by the trial court in the April 28, 2014 final judgment, in which the trial court stated that Fifth Third performed its obligations as a garnishee defendant and cannot be held liable for the $484,550.40 in Triangle's writ of garnishment. It is thus impossible for our Court to grant relief, as an affirmance or reversal of the trial court's denial of Fifth Third's motion . . . would have no impact on the trial court's April 2014 final judgment. [*Id.* at 3.]

The Court then went on to opine that the trial court reached the right result with its "April 2014 final judgment":

> In any event, the trial court's final judgment reached the correct result, as Triangle essentially demands that Fifth Third pay it a massive windfall. Triangle sought to force Fifth Third to pay $484,550.40 from Fifth Third's corporate funds to satisfy a debt that Bentwaters—not Fifth Third—incurred. Triangle offers no compelling argument as to why it should receive this money from Fifth Third's corporate funds, and instead lists now irrelevant ways in which it believes Fifth Third has violated Michigan Court Rules. "An appellant may not simply announce a position on appeal and leave it to this Court to rationalize the basis for that claim." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 287; 761 NW2d 761 (2008). The proper forum for such an argument is an appeal of the trial court's final judgment, which Triangle may make if it so chooses. [*Id.* at 3.]

The Court remanded the cases for entry of an order of dismissal. *Id.* Neither party sought leave to appeal the matter to the Supreme Court.

## II. SUBJECT-MATTER JURISDICTION

Returning to the instant case, Triangle attacks the trial court's summary disposition ruling in a number of ways, the first of which is to argue that the trial court lacked subject-matter jurisdiction to issue the declaratory ruling. Among other reasons for contending that the trial court lacked subject-matter jurisdiction, Triangle argues that there was no case or controversy to be resolved because any controversy that existed was resolved by the default judgment. It also argues that the trial court's issuance of a declaratory judgment was an impermissible review of a final judgment entered in another case, i.e., the default judgment. A party may question the trial court's subject-matter jurisdiction at any time. *Midwest Energy Coop v Mich Pub Serv Comm*, 268 Mich App 521, 522; 708 NW2d 147 (2005). We review de novo Triangle's challenges to the trial court's subject-matter jurisdiction. *Id.*

-5-

## A. SUMMARY OF GARNISHMENT PROCEEDINGS

Triangle first argues that the trial court did not have subject-matter jurisdiction to issue a declaratory judgment because any case or controversy that existed between Triangle and Fifth Third Bank was extinguished by the default judgment entered in the garnishment action. In order to provide context for this and other issues, we briefly turn our attention to garnishment proceedings.

In this case, Triangle obtained a judgment against Bentwaters. After obtaining a judgment, a party may utilize garnishment in order to satisfy the claim. *Ward v DAIIE*, 115 Mich App 30, 35; 320 NW2d 280 (1982). "The design of a garnishment proceeding is to preserve a principal defendant's assets in the control of the garnishee, *i.e.*, one who has property or money in his possession belonging to the defendant, so that the assets may later be accessible to satisfy a judgment against the principal defendant." *Id.* The conditions under which a court may garnish personal property are set forth by statute. *Macatawa Bank v Wipperfurth*, 294 Mich App 617, 619; 822 NW2d 237 (2011). In this regard, MCL 600.4011 provides, in pertinent part:

> (1) Subject to [MCL 600.4061 and MCL 600.4061a[4]], and the conditions in subsections (2) to (10), the court has power by garnishment to apply the following property or obligation, or both, to the satisfaction of a claim evidenced by contract, judgment of this state, or foreign judgment, whether or not the state has jurisdiction over the person against whom the claim is asserted:
>
> (a) Personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person if the third person is subject to the judicial jurisdiction of the state and the personal property to be applied is within the boundaries of this state.
>
> (b) An obligation owed to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state.

"The court may exercise its garnishment power only in accordance with the Michigan Court Rules." *Nationsbanc Mtg Corp of Georgia v Luptak*, 243 Mich App 560, 564; 625 NW2d 385 (2000). MCR 3.101 governs postjudgment garnishment proceedings, which are at issue in this case. Garnishments generally involve three parties: (1) the "plaintiff," which is the judgment creditor; (2) the "defendant," which is the judgment debtor; and (3) the "garnishee" which is the garnishee defendant. MCR 3.101(A)(1)-(3).[5] A request for a writ of garnishment shall be submitted to the clerk of the court that entered the judgment. MCR 3.101(D). The request must include a verified statement, which states, in part, that a judgment has been entered against the defendant and remains unsatisfied, as well as giving the total amount of the unsatisfied judgment. MCR

---

[4] MCL 600.4061 and MCL 600.4061a are inapplicable to the present case. MCL 600.4061 concerns when a garnishment writ is served against the state of Michigan. MCL 600.4061a specifically concerns a writ of garnishment that seeks a state tax refund or credit.

[5] In the garnishment action, Triangle was the plaintiff; Bentwaters was the defendant; and Fifth Third Bank was the garnishee.

3.101(D)(1), (2). Upon the issuance of a writ of garnishment, the writ must be served upon the garnishee. MCR 3.101(E)(2), (F)(1). The writ must include the verified statement, MCR 3.101(E)(1), and the verified statement acts as the plaintiff's complaint against the garnishee, MCR 3.101(M)(2).

Within 14 days of being served with the writ of garnishment, the garnishee shall mail or deliver to the trial court, the plaintiff, and the defendant a verified disclosure. MCR 3.101(H). In this case, it is undisputed that Fifth Third Bank failed to file its verified disclosure within the time specified by MCR 3.101(H). The verified disclosure serves as the garnishee's answer. MCR 3.101(M)(2). In the verified disclosure, the garnishee shall indicate whether it is indebted to the defendant. MCR 3.101(H)(1). If the garnishee is indebted to the defendant, "the garnishee shall file a disclosure revealing the garnishee's liability to the defendant as specified in subrule (G)(1) . . . ." MCR 3.101(H)(1)(a). If the garnishee is not indebted to the defendant, the garnishee shall so indicate in the verified disclosure. MCR 3.101(H)(1)(b). As indicated, MCR 3.101(G)(1) specifies a garnishee's liability to the defendant by listing the property belonging to a defendant for which the garnishee can be liable. See also *Nationsbanc Mtg Corp*, 243 Mich App at 564 ("[S]ubrule 3.101(G)(1) delineates the various categories of items for which a garnishee is liable."). Specifically, the rule provides:

Subject to the provisions of the garnishment statute and any setoff permitted by law or these rules, the garnishee is liable for

(a) all tangible or intangible property belonging to the defendant in the garnishee's possession or control . . . .;

(b) all negotiable documents of title and all goods represented by negotiable documents of title belonging to the defendant if the documents of title are in the garnishee's possession . . . .;

(c) all corporate share certificates belonging to the defendant in the garnishee's possession or control . . . .;

(d) all debts, whether or not due, owing by the garnishee to the defendant . . . .;

(e) all debts owing by the garnishee evidenced by negotiable instruments held or owned by the defendant . . . .;

(f) the portion of the defendant's earnings that are not protected from garnishment by law . . . .;

(g) all judgments in favor of the defendant against the garnishee in force . . . ;

(h) all tangible or intangible property of the defendant that, when the writ is served on the garnishee, the garnishee holds by conveyance, transfer, or title that is void as to creditors of the defendant . . . .; and

(i) the value of all tangible or intangible property of the defendant that, before the writ is served on the garnishee, the garnishee received or held by conveyance,

-7-

transfer, or title that was void as to creditors of the defendant . . . . [MCR 3.101(G)(1).]

"The garnishee is liable for no more than the amount of the unpaid judgment, interest, and costs as stated in the verified statement requesting the writ of garnishment." MCR 3.101(G)(2). "If there is a dispute regarding the garnishee's liability or if another person claims an interest in the garnishee's property or obligation, the issue shall be tried in the same manner as other civil actions." MCR 3.101(M)(1).

"Judgment may be entered against the garnishee for the payment of money or the delivery of specific property as the facts warrant." MCR 3.101(O)(1). "A money judgment against the garnishee may not be entered in an amount greater than the amount of the unpaid judgment, interest, and costs as stated in the verified statement requesting the writ of garnishment. Judgment for specific property may be enforced only to the extent necessary to satisfy the judgment against the defendant." *Id.* The judgment against the garnishee discharges the garnishee from all demands by the defendant for the money paid or property delivered in satisfaction of the judgment. MCR 3.101(O)(2). "Satisfaction of all or part of the judgment against the garnishee constitutes satisfaction of a judgment to the same extent against the defendant." MCR 3.101(O)(7).

"If the garnishee fails to disclose or do a required act within the time limit imposed, a default may be taken as in other civil actions." MCR 3.101(S)(1). "A default judgment against a garnishee may not exceed the amount of the garnishee's liability as provided in [MCR 3.101(G)(2)."] *Id.* This default process is the process that occurred between Triangle and Fifth Third Bank.

## B. DECLARATORY JUDGMENT

Triangle argues that the trial court did not have subject-matter jurisdiction to issue a declaratory judgment in the present case. MCR 2.605, which governs declaratory judgments, provides, in pertinent part:

(1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

(2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

This court rule neither limits nor expands the subject-matter jurisdiction of a trial court. *Associated Builders & Contractors v Dep't of Consumer & Indus Servs Director*, 472 Mich 117, 125; 693 NW2d 374 (2005), overruled in part on other grounds by *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed*, 487 Mich 349 (2010).

"An actual controversy is deemed to exist in circumstances where declaratory relief is necessary in order to guide or direct future conduct." *Huntington Woods v Detroit*, 279 Mich App 603, 616; 761 NW2d 127 (2008). See also *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed*, 487 Mich 349, 372 n 20; 792 NW2d 686 (2010) (stating that the "essential requirement of the term 'actual controversy' under [MCR 2.605] is that plaintiffs plead and prove facts which indicate an

adverse interest necessitating the sharpening of the issues raised") (citation and quotation marks omitted).

## C.  APPLICATION—THE TRIAL COURT HAD SUBJECT-MATTER JURISDICTION

### 1.  ACTUAL CASE OR CONTROVERSY

We conclude that there was an actual case or controversy in the instant matter and we disagree with Triangle's contention that the default judgment entered against Fifth Third Bank extinguished any case or controversy.  As noted, an actual controversy for purposes of MCR 2.605 exists when declaratory relief is necessary to guide or direct future conduct.  *Huntington Woods*, 279 Mich App at 616.  In its complaint in the instant case, Fifth Third Bank alleged that because there were insufficient funds in the Bentwaters Account to satisfy the default judgment and the USDA's security interest, it filed an interpleader action.  In the interpleader action, after holding that the USDA's security interest had priority over Triangle's interest, the district court ordered Fifth Third Bank to tender the funds to the court.  According to Fifth Third Bank, because of the resolution of the interpleader action and Triangle's assertions before the district court that Fifth Third Bank was required to satisfy the default judgment out of its corporate assets, Triangle would "undoubtedly attempt" to execute the default judgment against Fifth Third Bank's corporate assets.  This shows an actual case or controversy.  As will be discussed in more detail below, the default judgment in this case did not establish Fifth Third Bank's personal liability in the garnishment action.  Rather, the default simply acknowledged that Fifth Third Bank was obligated as a garnishee, *to the extent* it held property on behalf of Bentwaters.  The effect of the USDA's interest in the Bentwaters Account, and any potential liability for Fifth Third Bank beyond what is typically required of a garnishee, was not at issue at the time the default judgment was entered.  Declaratory relief was necessary to guide or direct the future conduct of the parties regarding whether Fifth Third Bank had any obligation to pay the default judgment out of its own corporate assets after the federal court ordered the funds in the Bentwaters Account to be tendered to it.  See *Huntington Woods*, 279 Mich App at 616.

In reaching this conclusion, we find unconvincing Triangle's citation to *DAIIE v Sanford*, 141 Mich App 820; 369 NW2d 239 (1985).  In *DAIIE*, after being injured in an automobile accident, the defendant initiated arbitration proceedings against the plaintiff insurance company, which had issued a policy that covered him, and Auto-Owners Insurance Company, which insured the driver of the vehicle in which he was riding.  In the arbitration proceedings, the attorneys for the two insurance companies raised the issue of stacking and argued that the defendant's recovery should be limited to $20,000.  Nonetheless, the arbitration panel issued the defendant an award of $20,000 against Auto-Owners Insurance Company and an award of $20,000 against the plaintiff.  Auto-Owners Insurance Company satisfied its obligation, but the plaintiff filed a complaint for declaratory relief.  The plaintiff sought a ruling that the award against it was unenforceable as contrary to the anti-stacking provision of the insurance policy it had given to the defendant.  The trial court granted a declaratory judgment in favor of the plaintiff.  This Court reversed, holding that there was no actual controversy.  *Id.* at 826-827.  The panel explained that because the parties had already submitted their dispute to an arbitration panel and had obtained a decision on the merits, the plaintiff did not need a declaratory judgment to guide its future conduct.  *Id.*  In sum, the arbitration panel had already determined the plaintiff's obligation, and any claim of error regarding that determination could only have been pursued through a motion to vacate the arbitration award.  *Id.* at 827.

Triangle's reliance on *DAIIE* is misplaced, as the case is distinguishable from the instant matter.  A determination whether a trial court has subject-matter jurisdiction is made by reference to

the allegations in the complaint. See *Grubb Creek Action Comm v Shiawassee Co Drain Comm'r*, 218 Mich App 665, 668; 554 NW2d 612 (1996). After Triangle obtained the default judgment, Fifth Third Bank moved the circuit court to set it aside, as well as to grant relief therefrom. In part, Fifth Third Bank argued that the default judgment was void because Triangle and the circuit court had not complied with the court rules regarding notice and hearing. By contrast, when it filed its complaint for declaratory relief in the instant matter, Fifth Third Bank acknowledged the default judgment. And, rather than arguing again that the default judgment was void, Fifth Third Bank requested that the trial court declare that, once it complied with the federal court's order in the interpleader action and tendered the funds in the Bentwaters Account to the federal court, it had no further obligations under the default judgment and Triangle could not execute or enforce the default judgment against Fifth Third Bank's corporate assets. This dispute was not something that had been submitted to the circuit court in the earlier garnishment proceedings. Because Fifth Third Bank was not seeking a declaration that the default judgment was void based on grounds that were presented in its motions to set aside the default judgment or for relief from the judgment, *DAIIE* is clearly distinguishable.

## 2. UNDERLYING SUBSTANTIVE CLAIM

Next, Triangle argues that the trial court lacked subject-matter jurisdiction because Fifth Third Bank's request for declaratory relief was not based on an underlying substantive claim. Triangle relies on statements made by the Supreme Court in *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119; 537 NW2d 596 (1995). In that case, the Supreme Court considered whether certain claims for declaratory relief were barred by the statute of limitations. At the beginning of its analysis, the Supreme Court stated the following:

> Limitations statutes do not apply to declaratory judgments as such. *Declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated.* There are no statutes which provide that declaratory relief will be barred after a certain period of time. Limitations periods are applicable not to the form of the relief but to the claim on which the relief is based. [*Luckenbach Steamship Co v United States*, 312 F2d 545, 548 (CA 2, 1963).] [*Id.* at 128 (emphasis added).]

We find Triangle's citation to *Taxpayers* unavailing. The statements from that case upon which Triangle relies regarding declaratory relief and substantive claims were made in the context of determining whether claims for declaratory relief were barred by the statute of limitations. This context is not present in the instant case; there is no claim in the present case that Fifth Third Bank's request for declaratory relief was precluded by any applicable statute of limitations. Rather, Fifth Third Bank sought to vindicate its claim that the declaratory judgment did not establish its personal liability and that, by paying the money in the Bentwaters Account in satisfaction of the USDA's interest, it satisfied any liability under the default judgment. As discussed above, this request for relief met the requirements for an "actual controversy," which is a requirement of subject-matter jurisdiction on a claim for declaratory relief. See, e.g., *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012); *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515-516; 810 NW2d 95 (2011).

### 3. NOT AN "APPEAL" FROM AN EARLIER CIRCUIT COURT JUDGMENT

Next, Triangle argues that the trial court lacked subject-matter jurisdiction because this case was functionally an appeal to the trial court from an earlier circuit court judgment (the default judgment). As Triangle correctly notes, jurisdiction over appeals of judgments from the circuit courts is vested in this Court. See MCL 600.308(1); MCR 7.203(A). However, we do not agree with Triangle's contention that Fifth Third Bank was seeking an appeal of the default judgment. Indeed, Fifth Third Bank's complaint in the present case did not ask the trial court to declare that the default was void, nor did it request to have the default vacated. Rather, Fifth Third Bank asked the trial court to declare whether it had any personal liability or any further obligations under the default judgment in light of changed circumstances, i.e., complying with the district court's order in the interpleader action to tender the funds in the Bentwaters Account to the district court. In short, Fifth Third Bank did not seek the equivalent of appellate relief from the default judgment.

### 4. PUBLIC POLICY

Lastly, Triangle makes an appeal to what it terms "public policy," as it argues that the issuance of a declaratory judgment interpreting a default judgment entered in a prior circuit court case is against "public policy." Triangle's argument is based on its contention that the declaratory judgment in this case was essentially appellate review of an earlier circuit court ruling. Having rejected that argument above, we find this vague appeal to "public policy" to be unconvincing. Contrary to Triangle's suggestions, the action for declaratory relief was not simply a request by a dissatisfied litigant to obtain relief that was denied at an earlier proceeding. Rather, it was a request for guidance on future conduct, which is the very purpose for declaratory relief. See, e.g., *Huntington Woods*, 279 Mich App at 616.

### III. RES JUDICATA

Next, Triangle argues that the doctrine of res judicata applies and that it should have prevented Fifth Third Bank from litigating the issue of its personal liability on the default judgment in the instant case. The application of res judicata is a question of law that this Court reviews de novo. *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013).

### A. DEFAULT JUDGMENT AS A SOURCE OF RES JUDICATA

Triangle argues that there are two potential sources of res judicata: (1) the default judgment; and (2) the judgment in the interpleader action. We first examine this claim as it pertains to the default judgment. Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39, 43; 795 NW2d 229 (2010). Res judicata applies "when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). In addition, the prior action must have resulted in a final decision. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006). Our Supreme Court "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich at 121. The burden of establishing the applicability of res judicata is on the party asserting it. *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002).

-11-

Two elements of res judicata are not in dispute because a default judgment represents a decision on the merits for purposes of res judicata, *Richards*, 272 Mich App at 531, and there is no doubt that this action involves the same parties—Triangle and Fifth Third Bank—that were involved in the prior garnishment action. In respect to those elements, we are in agreement with Triangle.

However, this is where our agreement with Triangle comes to an end, as we conclude that the instant action was not barred by the doctrine of res judicata. Triangle claims that the issue of Fifth Third Bank's personal liability could have been resolved in the garnishment action because, pursuant to MCR 3.101(M)(1), any dispute about the garnishee's liability shall be tried before the trial court. It appears that Triangle is equating the garnishee's liability referenced in MCR 3.101(M)(1)—which refers to a garnishee's liability *for the defendant's assets*—with a garnishee's personal liability to pay a default judgment. Triangle misinterprets MCR 3.101(M)(1). MCR 3.101(M)(1) provides that "[i]f there is a dispute regarding the garnishee's liability . . . the issue shall be tried in the same manner as other actions." Only one subsection of MCR 3.101 specifically addresses the scope of a garnishee's liability—MCR 3.101(G)—and this subsection speaks of a garnishee's liability for assets held on behalf of the *defendant*. Accordingly, Triangle's argument is based on a misunderstanding of the court rules. On this basis alone, we could find that Triangle did not carry its burden of establishing the applicability of res judicata. See *Baraga Co*, 466 Mich at 269.

Moreover, Triangle's argument fails to account for the change in facts that occurred in this case. See *Labor Council, Michigan Fraternal Order of Police v Detroit*, 207 Mich App 606, 608; 525 NW2d 509 (1994) ("if the facts change, or new facts develop, res judicata will not apply."). The default judgment was entered for Triangle, against Fifth Third Bank. There was no issue concerning the USDA, at least according to the default judgment, and thus no reason for Triangle to even seek to impose liability upon Fifth Third Bank personally.[6] Indeed, the default judgment did not account for the USDA's interest, as it was solely a default judgment against Fifth Third Bank, in favor of Triangle. As will be discussed in more detail in Section IV, *infra*, the default simply decided whether there was an account that could be garnished. It did not venture into the area of personal liability that Triangle suggests it did. Subsequent to the entry of the default judgment, the issue of a competing interest in the Bentwaters Account was litigated in the interpleader action. And, the district court's decision to award priority to the USDA over Triangle in that interpleader action altered the factual landscape of this case. In light of the way the facts of this case unfolded, we find the doctrine of res judicata inapplicable. See *id.* See also *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 636 n 10; 808 NW2d 471 (2010).

Further, even assuming that the issue of Fifth Third Bank's personal liability could have been resolved in the garnishment proceeding,[7] we would not find the last element of res judicata to be

---

[6] While, as discussed below in footnote 7, Fifth Third Bank could have raised the issue of the USDA's interest in the Bentwaters Account had it timely filed its disclosure, there was nevertheless no determination as to whether that interest was superior to any interest asserted by Triangle. That determination did not come about until after the district court rendered a decision in the interpleader action.

[7] We note that *if* Fifth Third Bank had timely filed its verified disclosure, it *could have* created a dispute regarding, at the very least, the priority of the USDA's interest in the Bentwaters Account. See MCR 3.101(M)(1); see also *Blue Water Fabricators, Inc v New Apex Co, Inc*, 205

-12-

present, i.e., that the prior action resulted in a final decision. See *Richards*, 272 Mich App at 531. Again, we acknowledge that a default judgment is treated as a decision on the merits for purposes of applying the doctrine of res judicata, and that it can be a final decision. See *id.* However, "[t]o be accorded the conclusive effect of res judicata, the judgment must ordinarily be a firm and stable one, the last word of the rendering court[.]" *Kosiel v Arrow Liquors Corp*, 446 Mich 374, 381; 521 NW2d 531 (1994) (citation and quotation marks omitted). Here, in Fifth Third Bank's second motion for relief from judgment, it argued that the default judgment had to be vacated because, contrary to MCR 2.603(B), Triangle did not give notice of its request for a default judgment and Triangle did not file a motion with the circuit court for entry of a default judgment. The circuit court denied the motion, and we granted leave to appeal. In the ensuing *Triangle* opinion, we declined to address the issue concerning whether the default judgment was entered in compliance with MCR 2.603(B), concluding that the issue was moot, in light of the April 28, 2014 final order entered in this case.

"A judgment cannot be asserted for purposes of res judicata where a party without fault on his or her part is prevented from obtaining a review of a judgment merely because, from intervening events, the controversy has become moot." 47 Am Jur 2d, Judgments, § 531, p 87. See also *Gelpi v Tugwell*, 123 F 2d 377, 378 (CA 1, 1941) (stating the rule).[8] Here, Fifth Third Bank was prevented from obtaining review of the default judgment because this Court, in the *Triangle* opinion, declared that an intervening event—the trial court's April 28, 2014 final order—rendered moot the issue whether the default judgment was entered in compliance with MCR 2.603(B). Because the intervening act that prevented Fifth Third Bank from obtaining review of the default judgment was the April 28, 2014 final order, which was rendered by the trial court in a dispute between the parties regarding the scope of the default judgment, we conclude that Fifth Third Bank was without fault for being prevented from obtaining review of the default judgment. As such, we conclude that the present case is not barred by the doctrine of res judicata. See *Richards*, 272 Mich App at 531; 47 Am Jur 2d, Judgments, § 531, p 87.

Furthermore, in regard to the *Triangle* opinion's declaration that the matter was moot in light of the April 28, 2014 order, we note that the panel expressly directed the parties to address the issue of personal liability on appeal of the April 28, 2014 order. In other words, the panel instructed the parties to raise this very issue in the present appeal and indicated that the instant appeal was the proper forum for such an argument. Thus, it appears the prior panel correctly recognized that the garnishment action failed to yield a determination on the precise question now at issue: was Fifth Third Bank personally liable on the default judgment, such that Triangle could collect from Fifth Third Bank even after the issue of priority between the USDA's and Triangle's competing claims to the Bentwaters Account was resolved? We address that issue in Section IV of this opinion.[9]

---

Mich App 295, 301; 517 NW2d 319 (1994) (indicating that a dispute under MCR 3.101(M)(1) can include the priority of competing claims on amounts the garnishee owes the defendant).

[8] Although *Gelpi* is not binding on this Court, we may consider the opinion as persuasive authority. *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 639 n 15; 732 NW2d 116 (2007).

[9] Because of our resolution of Triangle's issues concerning subject-matter jurisdiction and res judicata, we need not address Fifth Third Bank's argument that the prior *Triangle* decision constitutes the law of the case and represents an alternate ground for affirmance. See *Bloemendaal v Town & Country Sports Center, Inc*, 255 Mich App 207, 216; 659 NW2d 684

## B. INTERPLEADER ACTION AS A SOURCE OF RES JUDICATA

As a final note on the issue of res judicata, Triangle argues that the interpleader action filed in federal district court *could have* decided the issue of Fifth Third Bank's personal liability, and, as a result, the interpleader action should have precluded Fifth Third Bank from raising the issue in the instant case. The question whether a federal court judgment precludes relitigation of an issue in state court is resolved by federal preclusion law. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380-381; 596 NW2d 153 (1999). In its brief on appeal, Triangle makes no mention of federal preclusion law. In addition, Triangle—perhaps conveniently—fails to mention that it raised the issue of Fifth Third Bank's personal liability on the default judgment in its motion for summary disposition, and that the district court expressed a belief that the issue was meritless, but expressly declined to rule on the matter. As a result of Triangle's failure to address this matter in any detail, we find that Triangle abandoned the issue of whether the present case should have been barred by the interpleader action. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority[.]" *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (internal citation omitted).

## IV. FIFTH THIRD BANK WAS NOT PERSONALLY LIABLE

Next, we turn our attention to Triangle's challenge to the trial court's summary disposition ruling. That is, we consider whether the trial court erred by granting summary disposition in the declaratory action and by concluding that Triangle could not execute the default judgment against Fifth Third Bank's corporate assets, and instead was limited to executing the default judgment against any obligation that Fifth Third Bank owed to Bentwaters.[10] We review de novo the trial court's decision on a motion for summary disposition in an action for a declaratory judgment. *Farm Bureau Ins Co v Abalos*, 277 Mich App 41, 43; 742 NW2d 624 (2007). Because it appears the trial court considered documentary evidence in granting the motion for summary disposition, we consider the court's order as one granted pursuant to MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Summary disposition is appropriate under MCR 2.116(C)(10) if "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." In reviewing the issue we construe the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in a light most favorable to the party opposing the motion. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009).[11]

---

(2002). We also disagree with Fifth Third Bank's position. Notably, we find Fifth Third Bank's argument to be based on a statement of fact, not on any conclusion of law or holding by the *Triangle* panel. Nor are we convinced by Fifth Third Bank's argument that the prior panel believed that the default judgment was an interlocutory order.

[10] We note that in light of the interpleader action, any claim Triangle had to the Bentwaters Account would be subordinate to the USDA's claim against the account.

[11] At the outset of our analysis on this issue, we once again note that we have rejected any assertion by Fifth Third Bank that the prior *Triangle* panel decided or necessarily decided any issues that would constitute the law of the case and which would preclude us from addressing this issue. Moreover, we note that, although Fifth Third Bank claims the law of the case doctrine

Triangle first directs our attention to what it calls the "face" of the default judgment, pointing out that the language employed in the default judgment simply entered judgment "for Triangle" and "against" Fifth Third Bank. Triangle argues that this alone should compel the conclusion that the default judgment "clearly establishes" that it was a money judgment against Fifth Third Bank, i.e., one that is to be satisfied from Fifth Third Bank's personal assets, not from any obligation Fifth Third Bank owed to Bentwaters.[12] We review judgments in the same manner as we review contracts or other written instruments, meaning our review is de novo and we attempt to ascertain the intent of the issuing court based on the plain language of the document. See *Neville v Neville*, 295 Mich App 460, 466; 812 NW2d 816 (2012). See also 46 Am Jur 2d, Judgments, § 74, pp 447-448.

In the instant case, we are in agreement with Triangle that the default judgment was a money judgment, as it directed the payment of a sum of money. See *Stewart v Isbell*, 155 Mich App 65, 80; 399 NW2d 440 (1986) (describing money judgments). However, we do not agree with Triangle that the inquiry is so simple. While an unambiguous judgment must be enforced according to its terms, we also construe the judgment in light of the pleadings and circumstances present at the time it was entered. See 46 Am Jur 2d Judgments, § 74. Here, we cannot overlook the fact that the default judgment was entered in a garnishment proceeding after Fifth Third Bank, the garnishee, failed to file its verified disclosure. See MCR 3.101(S)(1) (providing for the entry of a default when a garnishee fails to make the requisite disclosures). This, we feel, compels us to examine judgments in garnishment proceedings and to determine whether such judgments would ordinarily subject a garnishee to personal liability, beyond the assets possessed by the debtor. Also, we examine whether there is any reason to treat a default judgment in a garnishment action differently than a non-default judgment in a garnishment action.

## A. JUDGMENTS IN GARNISHMENT PROCEEDINGS

Reviewing pertinent statutes, caselaw, and court rules leads to the conclusion that a judgment on a writ of garnishment generally only makes a garnishee liable for the property of the defendant that the garnishee possesses. See MCL 600.4011(1)(a) (stating that a trial court may apply personal property belonging to the defendant but which is in the possession or control of the third party or an obligation owed the defendant to satisfy a judgment against the defendant); MCR 3.101(G)(1) (providing that a garnishee is liable for property belonging to the defendant that is in the garnishee's

applies and precludes us from revisiting this issue, Fifth Third Bank's own argument shows why the doctrine is inapplicable with regard to this issue. Indeed, Fifth Third Bank contends that the *Triangle* panel recognized that the trial court in *this case* decided the issue at hand; Fifth Third Bank points to nothing in the *Triangle* opinion to suggest that the panel decided the issue at hand. See *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009) (the law of the case doctrine applies to rulings of an appellate court, not a trial court).

[12] Triangle also argues that the trial court's "findings" in the April 28, 2014 final order "required" the conclusion that the default judgment was a money judgment to be satisfied against Fifth Third Bank's assets, without regard to assets it held on behalf of Bentwaters. We reject this argument. Regardless of whether the trial court made such a "finding"—and we doubt it did, as such a "finding" would be inconsistent with the trial court's eventual ruling—we do not afford deference to the trial court in deciding a motion for summary disposition; instead, our review is de novo. See *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 12; 824 NW2d 202 (2012).

possession or control or debts the garnishee owes the defendant); *Smit v State Farm Mut Auto Ins Co*, 207 Mich App 674, 683; 525 NW2d 528 (1994) (explaining that a plaintiff in a garnishment action is entitled to recover against the garnishee "only to the extent that the principal defendant . . . could recover against [the garnishee-defendant]"). There are exceptions to this general rule in cases involving fraud or wrongdoing on the part of the garnishee. One such instance involves a situation where a garnishee refuses to expose property so that execution can be levied on the property. See MCR 3.101(O)(5). In such a case, "the court may order that an execution be issued against the garnishee in an amount not to exceed twice the value of the specifically chargeable property." MCR 3.101(O)(5). Additionally, a garnishee faces personal liability "to pay out of his own goods and estate the full amount due" on a judgment obtained by the plaintiff when the garnishee "knowingly and willfully" makes false statements on the verified disclosure. MCL 600.4051.[13] In a statement that is consistent with these two exceptions, our Supreme Court has declared that "[i]t is elementary law that the right of a plaintiff against the garnishee, except there be fraud, is no more than the right of the principal debtor." *Erb-Kidder Co v Levy*, 262 Mich 62, 64; 247 NW 107 (1933).

## B. DEFAULT JUDGMENTS IN GARNISHMENT PROCEEDINGS

With that in mind, we turn to the default judgment entered in this case. MCR 3.101(S)(1) provides that, in the event a garnishee fails to make a timely verified disclosure, "[a] default may be taken as in other civil actions." A default operates as an admission of liability by the defaulting party. *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000). A default judgment is not an admission regarding damages, however. *Id.* As to the amount of the default judgment in garnishment proceedings, MCR 3.101(S)(1) purports to offer some guidance, providing that "[a] default judgment against a garnishee may not exceed the amount of the garnishee's liability as provided in subrule (G)(2)." "Subrule (G)(2)" as referenced in the preceding court rule, refers to MCR 3.101(G)(2), which provides:

> The garnishee is liable for no more than the amount of the unpaid judgment, interest, and costs as stated in the verified statement requesting the writ of garnishment. Property or debts exceeding that amount may be delivered or paid to the defendant notwithstanding the garnishment.

## C. A DEFAULT IN A GARNISHMENT ACTION DOES NOT IMPOSE PERSONAL LIABILITY ON THE GARNISHEE

We are not of the opinion that, by referencing MCR 3.101(G)(2), the court rules set the amount of liability a garnishee has to the plaintiff, without regard to any property of the defendant's held by the garnishee. Rather, a default in a garnishment action operates as an admission by the garnishee of *liability to the defendant*, and the default judgment in such an action is no different than a non-default judgment. In other words, just like a default in "other civil actions" does not operate as an admission as to the amount of damages, a default in garnishment proceedings does not operate as an admission of damages for which the garnishee is

---

[13] There have been no arguments that either MCR 3.101(O)(5) or MCL 600.4051 apply to the instant case.

liable, irrespective of any property or assets held on behalf of the defendant. See, generally, *Kalamazoo Oil Co*, 242 Mich App at 79. Thus, a default judgment does not, as Triangle would have us conclude, establish that the garnishee is liable to satisfy the judgment out of its personal assets.

We reach this conclusion by first noting that MCR 3.101(G)(2) sets an upper limit on a garnishee's liability. This upper limit is set by referencing the property belonging to the *defendant*, not the garnishee. Indeed, consistent with the general rule that a garnishee's liability is to be determined by reference to the defendant's property, subrule (G)(2) states that a garnishee may deliver to the defendant any property exceeding the amount of the judgment. The context in which subrule (G)(2) appears in the garnishment process shapes this conclusion as well. See *In re McCarrick/Lamoreaux*, 307 Mich App 436, 446; 861 NW2d 303 (2014) ("When interpreting a court rule, we must read the rule's provisions reasonably and in context.") (citation and quotation marks omitted). Here, subrule (G)(2) appears immediately after MCR 3.101(G)(1), which expressly lists the types of property belonging to a debtor for which the garnishee can be liable. Subrule (G)(2), then, ensures that a garnishee's liability, having been established through the *defendant's* assets and property listed in (G)(1), is not to exceed the principal judgment, and that all of the defendant's property which exceeds the judgment may be returned to the defendant.

Further, our conclusion is shaped by the significance of the role that a verified disclosure form plays in the default process. The verified disclosure form—which, we again note, forms the basis of the default in the first instance when the garnishee fails to timely file it—has a distinct purpose. That purpose, according to MCR 3.101(H)(1)(a), is to disclose "the garnishee's liability to *the defendant* as specified in [MCR 3.101(G)(1)]," if any. (Emphasis added). The significance of this form, then, is to point out the garnishee's liability *to the defendant*. This focus on the garnishee's liability *to the defendant* is consistent with the framework of garnishment proceedings as a whole—that is, to require payment from the garnishee for the defendant's assets held by the garnishee. Nothing in this rule even broaches the subject of a garnishee's potential personal liability. That a default arises from the garnishee's failure to disclose its liability to the defendant supports the notion that a default could at most serve as an admission of liability to the defendant, and not an admission by the garnishee that it is liable, regardless of whatever assets it held on behalf of the defendant.

In sum, we conclude that it would be incongruous with the entire garnishment process for us to find, as Triangle suggests, that a default judgment entered in a garnishment proceeding operates to impose personal liability on the garnishee. There is simply no support for Triangle's position in the pertinent statutes, court rules, or caselaw. Thus, we read the reference to subrule (G)(2) in MCR 3.101(S)(1) as stating that a default is to an admission of liability on the part of the garnishee, but only for the amount of the defendant's assets or property—as listed in MCR 3.101(G)(1)—held by the garnishee. Such amount cannot be determined by a default judgment, as it is unknown what assets, if any, can be garnished. Likewise, a default judgment does not operate to substitute the garnishee's assets for those belonging to the defendant. Again, this interpretation is not only supported by reference to the court rules in context, but also by the purpose of garnishment proceedings as a whole. That is, a garnishment is meant to ensure payment to the plaintiff from the defendant's assets held by the garnishee, and not anything beyond the defendant's assets. See, e.g., *Erb-Kidder Co*, 262 Mich at 64; *Smit*, 207 Mich App at

683. When the default judgment in the instant case is construed in light of garnishment law as a whole, the default judgment makes Fifth Third Bank liable for the funds in the Bentwaters Account, i.e., those belonging to the debtor, and not for the personal assets of Fifth Third Bank. Accordingly, we are not convinced that a default judgment entered in a garnishment proceeding is any different from any other judgment entered in a garnishment proceeding, and Triangle fails to make a compelling claim that default judgments should be treated differently than non-default judgments in a garnishment action.

We have found no authority in Michigan to suggest otherwise. Triangle contends the concept that a judgment against a garnishee can be satisfied from the garnishee's personal assets has existed in Michigan for over 100 years. It directs our attention to *Childs v N B Carlstein*, 76 F 86, 94 (ED Mich, 1896), for the statement that "his failure to expose for execution such property and effects after the plaintiff has become entitled to levy thereon renders the garnishee defendant personally liable in his own goods and estate to the amount of such judgment." Setting aside for now that we are not bound by *Childs*, see *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 5; 772 NW2d 827 (2009) (a decision from a lower federal court is not binding), we disagree that the statement from the case even lends support to Triangle's position. The cited statement does not provide that, in all circumstances, a judgment against a garnishee can be satisfied from the garnishee's personal assets. Rather, it states that the garnishee is liable to pay the judgment from his or her own goods and estate when the garnishee fails to expose the defendant's property for garnishment. As noted above, that remains the law today. See MCR 3.101(O)(5). In addition, we note that Triangle cites *Missouri Tie & Lumber, Co v Sullivan*, 275 Mich 26, 28; 265 NW 779 (1936), for the statement that "[t]he general statute relative to garnishment permits execution to issue upon a judgment against a garnishee defendant." *Missouri Tie & Lumber* also does not support Triangle's argument, as the case gives no indication whether a garnishee's personal assets can be used to satisfy a judgment against a garnishee. Nor does the rest of the decision in *Missouri Tie & Lumber* support Triangle's position.

Finally, we note that Triangle cites this Court's decision in *Chayka v Brown*, 92 Mich App 360; 284 NW2d 530 (1979). In that case, the plaintiff obtained a judgment against the defendants. Thereafter, the garnishee entered into a land contract with the defendants to buy a piece of property. The plaintiff served writs of garnishment on the garnishee, which prohibited the garnishee from paying any obligations to the defendants. However, the garnishee paid the remainder of the installment payments to the defendants. The trial court entered judgment in favor of the plaintiff and against the garnishee for an amount not to exceed 1-1/4 times the amount owing on the judgment against the defendants. On appeal, this Court affirmed in part the judgment against the garnishee. *Id.* at 369. The panel stated:

> Garnishees' duties and obligations under the rules and their potential liability to the plaintiffs attach at the time they are properly served with the writ. GCR 1963, 738.4, 738.5. They then become responsible for the timely performance of the specific duties imposed by GCR 1963, 738, *at the risk of default judgment against them which may be executed against their own funds or property*, GCR 1963, 738.8. Their liability in such situations is limited to 1¼ times the amount of the judgment entered in favor of the plaintiffs against principal defendants. [*Id.* (emphasis added).]

We find the citation to *Chayka* unavailing for a number of reasons. First, the case was decided before 1990, and we are not bound by the decision. *In re Stillwell Trust*, 299 Mich App

-18-

289, 299 n 1; 829 NW2d 353 (2012). Moreover, the statement that garnishees were responsible "for the timely performance of specific duties . . . at the risk of default judgment entered against them which may be executed against their own funds or property" was not necessary to the resolution of any issues raised in *Chayka*. Indeed, the case did not involve a default judgment, so any statement about default judgments was unnecessary to the case, and is non-binding dicta. See *Auto-Owners Ins Co v All Star Lawn Specialists Plus, Inc*, 497 Mich 13, 21 n 15; 857 NW2d 520 (2014). Further, and perhaps most fatal to Triangle's reliance on the case, the statement in *Chayka* about default judgments cited the now-outdated GCR 1963, 738.8, which provided:

> If the garnishee fails to make disclosure or do any of the acts required of him by these rules within the time limitations imposed by these rules, default may be taken against the garnishee as in other civil actions and in case he fails to comply with an order of the court he may be adjudged in contempt of court. *Judgment shall not be rendered against the garnishee or his property* until after judgment has been recovered by the plaintiff against the principal defendant. [Emphasis added.[14]]

It is the last sentence that references the garnishee's property, and, we suspect, is the sentence upon which the panel in *Chayka* relied in stating that a garnishee's personal property could be used to satisfy a default judgment. However, this last sentence has been deleted from the current version of the court rule on default judgments in garnishment actions. As noted above, MCR 3.101(S) provides, in pertinent part:

> (1) If the garnishee fails to disclose or do a required act within the time limit imposed, a default judgment may be taken as in other civil actions. A default judgment against a garnishee may not exceed the amount of the garnishee's liability as provided in subrule (G)(2).

> (2) If the garnishee fails to comply with the court order, the garnishee may be adjudged in contempt of court.

A change in the language employed in a statute or court rule is presumed to reflect a change in meaning. See *Michigan Charitable Gaming Ass'n v State*, __ Mich App __; __ NW2d __ (Docket No. 323410, issued May 28, 2015), slip op at 12. Here, the pertinent sentence of GCR 1963, 738.8 was omitted from the current version of the court rules. Thus, to the extent the sentence at issue could be read to impose personal liability on the garnishee and force the garnishee to satisfy a default judgment from its personal assets, we presume that the omission of that sentence in the current version of the court rules was intentional. Accordingly, we reject Triangle's argument that a default judgment in a garnishment action allows a plaintiff to access the garnishee's personal assets

---

[14] We note, as does Triangle, that 4 Longhofer, Michigan Court Rules Practice, p 21, contains a very similar statement. However, we are not bound by this treatise. We also note that the treatise cites MCR 3.101(S)(1) as support for this proposition. However, as discussed, MCR 3.101(S)(1) does not support that position.

in order to satisfy the underlying judgment.[15]  Rather, the garnishee's liability is based on the property of the defendant that is held by the garnishee.

In light of this conclusion, we find that the trial court did not err in granting summary disposition to defendant.  As noted above, the default judgment entered in the garnishment case did not establish that Fifth Third Bank was liable to pay the default judgment out of its personal assets.  Rather, the default judgment only served as an admission of Fifth Third Bank's liability for the assets of Bentwaters or obligations owed to Bentwaters, if any.  In the interpleader action, the district court determined that the security interest of the USDA in the funds in the Bentwaters Account had priority over any claim by Triangle to the funds.  After Fifth Third Bank tendered the funds in the Bentwaters Account to the district court, the district court discharged Fifth Third Bank from all liability with respect to those funds.  Because the default judgment made Fifth Third Bank liable for its debt or obligation to Bentwaters, and because Fifth Third Bank was subsequently discharged from any liability regarding the funds in the Bentwaters Account, the trial court correctly concluded that Fifth Third Bank was not required to satisfy the default judgment out of its corporate assets and that it had no further obligations under the default judgment.

## V.  EFFECT OF THE INTERPLEADER ACTION

In its April 28, 2014 opinion and order, the trial court declared that Fifth Third Bank performed its obligations under the default judgment when, following the order in the interpleader action, it paid the funds in the Bentwaters Account to the district court.  Triangle contends that the trial court erred by concluding that Fifth Third Bank had no further obligations under the default judgment.[16]  Of the four arguments advanced on appeal, we note that Triangle has failed to preserve its first two arguments because it did not raise them before the trial court.  Because of Triangle's failure to properly preserve these arguments, we could decline to consider

---

[15] We note that Triangle cites the general proposition that funds which are deposited in a bank account create a debtor-creditor relationship between the bank and the depositor.  See *Riverview Co-op, Inc v First Nat'l Bank & Trust Co of Mich*, 417 Mich 307, 317-318; 337 NW2d 225 (1983).  The money becomes the property of the bank, and the bank has an obligation to pay the depositor the money in the account, upon demand.  See *id.*  Triangle seems to argue that, because the money that Bentwaters deposited in its account is now part of Fifth Third Bank's assets, the default judgment should simply be construed as a judgment to be satisfied by Fifth Third Bank's corporate assets.  We reject that position.  Although the funds in the Bentwaters Account belonged to Fifth Third Bank upon deposit, the fact remains that, in a garnishment action, it is the defendant's assets that are subject to garnishment, not the garnishee's assets.  See MCL 600.4011(1)(b); MCR 3.101(J)(1).  In this case, it was Fifth Third Bank's obligation to pay money on Bentwaters' demand that was subject to garnishment, not *any* property owned by Fifth Third Bank.  See MCR 3.101(G)(1)(e).

[16] To the extent Fifth Third Bank asks this Court not to consider Triangle's arguments because of its contention that the *Triangle* panel's decision represents the law of the case, we do not agree that our consideration of these issues is constrained by the law of the case doctrine.  The *Triangle* panel did not address these issues, nor were these issues necessarily decided by the *Triangle* panel.  See *Kalamazoo v Dep't of Corrections (After Remand)*, 229 Mich App 132, 135; 580 NW2d 475 (1998) (describing the law of the case doctrine).

them. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 377; 761 NW2d 353 (2008); *Coates v Bastian Bros, Inc*, 276 Mich App 498, 509-510; 741 NW2d 539 (2007). Moreover, we note that Triangle's brief is largely wanting in terms of citation to authority for some of its propositions. Nevertheless, we will briefly address and reject Triangle's claims.

## A. UNPRESERVED ARGUMENTS

First, to the extent Triangle argues that the trial court's decision in the instant case was in error because of an erroneous determination of priority by the district court, we note that Triangle has never filed a direct appeal of the district court's determination. Any attempt to attack that determination in the instant case would be barred by the res judicata. See *Browning v Levy*, 283 F3d 761, 771 (CA 6, 2002) (listing the elements of res judicata, for purposes of federal preclusion law, as (1) a final decision on the merits, (2) a subsequent action between the same parties or their privies, (3) an issue in the subsequent action was litigated or should have been litigated in the prior action, and (4) an identity of the causes of action). Second, Triangle essentially argues that the default judgment in the garnishment action had to result in payment to Triangle, and that any other action besides payment could not satisfy the judgment. However, as set forth above, the default judgment did not establish that Fifth Third Bank was required to pay Triangle out of its own assets. Given the subsequent interpleader action, declaratory relief was necessary to set forth the rights and obligations of the parties, and we see no error in the conclusion that Fifth Third Bank's obligation in regard to the Bentwaters Account was satisfied when it paid the USDA, an entity with higher priority in regard to the funds.

## B. PRESERVED ARGUMENTS

Next, we turn our attention to the two arguments that Triangle raised before the trial court. Triangle claims that the trial court could not have relied on the interpleader action for determining that Fifth Third Bank had satisfied its obligations under the default judgment, because, according to Triangle, the district court lacked subject matter jurisdiction to consider the interpleader action. However, Triangle has provided this Court with no authority for the proposition that a state appellate court can declare, in what can only be described as a collateral attack on the district court's judgment, that a federal district court lacked subject-matter jurisdiction. And, we note that in *Chicot Co Drainage Dist v Baxter State Bank*, 308 US 371, 376; 60 S Ct 317; 84 L Ed 329 (1940), the United States Supreme Court held that, although the lower federal courts are courts of limited jurisdiction, their determinations regarding whether they have subject-matter jurisdiction over an action, while open to direct review, may not be collaterally attacked. Although the lower court record does not indicate whether Triangle challenged the jurisdiction of the federal court in the interpleader action, "the rule applies with equal force to suits in which jurisdiction has been expressly determined and those in which resolution of the jurisdictional question is merely implicit," *In re Bulldog Trucking, Inc*, 147 F3d 347, 352 (CA 4, 1998).[17]

---

[17] In any event, we find no merit in Triangle's claim that the district court lacked subject-matter jurisdiction in the interpleader action.

Finally, Triangle again takes issue with the interpleader action filed in this case, arguing that "a judgment debtor cannot satisfy a judgment by filing a post-judgment lawsuit seeking interpleader and essentially paying a third-party rather than the judgment creditor." However, this argument— which is largely unsupported in Triangle's brief—presupposes the correctness of Triangle's position that the default judgment made Fifth Third Bank personally liable and that the judgment could only be satisfied by paying Triangle. As noted above, we have rejected that position. In addition, to the extent Triangle attempts to argue that Fifth Third Bank should not have been able to bring the interpleader action in the first instance, we construe such a claim as an impermissible collateral attack on the district court's ruling on the interpleader action. We will not entertain such a collateral attack.

Affirmed.


/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael F. Gadola