# STATE OF MICHIGAN

# COURT OF APPEALS

PHYLLIS WRUBEL,

Plaintiff-Appellant,

UNPUBLISHED
February 22, 2018

v

THE BIG GREEN BARN, LLC, and
MIKE WRUBEL,

Defendants-Appellees.

No. 335487
St. Clair Circuit Court
LC No. 15-001083-NO

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This premises liability action[1] arises from plaintiff's October 2012 fall from the hayloft of a barn located on defendants' premises. Defendant Mike Wrubel (Mike)[2] and his wife, Becky Wrubel (Becky), own and operate defendant The Big Green Barn, LLC and use the barn to board their own horses and those of third parties.

In early 2012, plaintiff and her husband, Kevin Wrubel (Kevin), defendant's brother, moved in with Mike and Becky. Plaintiff testified at her deposition that she and Kevin had been informed by their landlord that the home they had been renting had been sold and that they would need to move. Plaintiff testified that Mike and Becky allowed her and Kevin to move into their finished basement until they found a new place to live. Plaintiff further stated that they never paid rent to Mike and Becky and that she was not aware of any arrangement with them

---

[1] Plaintiff argued below that her claim was one for ordinary negligence. The trial court held that plaintiff's claim sounded in premises liability. Plaintiff does not challenge that holding on appeal.

[2] Given the commonality of surnames, we will use first names to identify certain persons.

-1-

regarding rent. Kevin stated at his deposition that the move was motivated by his desire to help Mike and Becky with renovations and the opening of a new winery business.

Kevin generally assisted Mike with chores around the farm, including feeding the horses and moving them from the barn to the outside pastures or to the enclosed riding arena. Plaintiff testified that she helped by feeding and watering the miniature horses kept inside the barn, and that Mike and Becky had asked her to help out with the "minis." This help did not require plaintiff to go into the hayloft area; in fact, plaintiff had only been in the hayloft once before the accident, in order to temporarily store some personal items there. Plaintiff had injured her left arm in a fall from a stepladder earlier that year, requiring surgery; she testified that at the time of the October 2012 incident, she could not lift her left arm above chest level and that she required Kevin's help with activities such as doing her hair. Kevin stated that, as plaintiff was recovering from surgery, he generally did the morning feedings by himself, although plaintiff had begun to "help a little bit" with the morning feedings in the month before her fall by giving the horses grain as a "snack." None of the tasks plaintiff helped with required her to go into the hayloft.

On the morning of plaintiff's fall, Kevin left the house early, as it was his first day at a new job. Mike fed the horses that morning. Plaintiff stated at her deposition that, although she had never fed the horses by herself, she went into the barn later that morning to feed them because she did not know that Mike had already done so. Although she had never fed hay to the full-size horses, plaintiff decided to give one of them, Sally, some hay. There was an area on the ground floor where hay was kept for the mini-horses; however, it was empty that morning. Plaintiff went into the hayloft to retrieve some hay for Sally. In the process of getting the hay, plaintiff fell from the hayloft, through a railing, into the riding arena below, fracturing her right ankle and wrist and sustaining other injuries to her head, back, and limbs. Plaintiff testified that when she touched the rail, it "went swinging out" to the right. Kevin testified that the railing was not attached to anything to keep it from being dislodged. He stated that Mike had told him that the rail was just "for cosmetics" in case the insurance company investigated the loft.[3]

Plaintiff filed suit against Mike and The Big Green Barn, alleging one count of negligence and one count of "willful and wanton misconduct."[4] Under the count of negligence, plaintiff alleged that defendants breached both their common-law duty to her and violated several sections of the housing law of Michigan concerning the duties owed by landlords to tenants. After discovery, defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's claim was improperly pled as one for ordinary negligence, and further that defendants had not breached any duty to plaintiff. Defendants conceded for purposes of the

---

[3] Mike and Becky testified that the railing was affixed with a screw. Plaintiff stated that she had no idea how, if at all, the railing was affixed. The trial court, viewing the evidence in the light most favorable to the nonmovant, assumed for the purposes of summary disposition that the railing was not attached to anything and could be freely dislodged. We will assume the same in our review.

[4] Plaintiff also filed two counts related to an earlier fall from a stepladder; however, she voluntarily dismissed those claims after the close of discovery.

summary disposition motion that, viewing the evidence in the light most favorable to the non-movant, the trial court could assume that the railing was not permanently affixed.

At the summary disposition hearing, the parties disputed plaintiff's status at the time of her fall. Plaintiff argued that she was an invitee, while defendants argued that she was properly considered a trespasser but at best was a licensee as a social guest of defendants. The parties thus disputed the duty of care owed by defendants to plaintiff. The trial court determined that plaintiff was a licensee and stated:

> Defendants only had a duty to warn Plaintiff about the guard rail if: (1) Defendants knew or should have known that the railing was not affixed to anything, (2) Defendants should have realized that the loose railing poses [sic] an unreasonable risk of harm to Plaintiff, (3) Defendant [sic] should have expected that Plaintiff would not discover or realize the danger, and (4) Plaintiff did not know or have reason to know of the loose guardrail and the risk involved."

The trial court held that the loose railing would pose an unreasonable risk of harm to someone who encountered it, but found that plaintiff had "failed to demonstrate a genuine issue of material fact regarding whether defendants knew or should have known that Plaintiff would be in the hayloft." Therefore, "reasonable minds could not conclude that Defendants knew or should have known that the guardrail posed an unreasonable risk of harm to Plaintiff . . . ." Accordingly, the trial court granted summary disposition in favor of defendants.[5] This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

---

[5] The trial court also held that plaintiff had not presented any evidence in support of her claim for "willful and wanton conduct" or her allegation that she was a tenant of defendants and therefore entitled to the protections of the housing law of Michigan. Plaintiff does not challenge those holdings on appeal.

We review de novo questions of law, such as the existence of a legal duty in a negligence action. *Graves v Warner Bros*, 253 Mich App 486, 503; 656 NW2d 195 (2002).

## III. ANALYSIS

On appeal, plaintiff does not challenge the trial court's determination that she was a licensee. Rather, she takes issue with the trial court's statement that the "integral issue in this case is whether Defendants should have realized that Plaintiff would be in the hayloft." Plaintiff argues that the trial court impermissibly required her to prove an additional element—beyond those imposed by law—in order to demonstrate that defendants owed her a duty of care and breached that duty. In the alternative, she argues that she presented sufficient evidence to demonstrate a genuine issue of material fact regarding whether defendants knew or should have known that she would be in the hayloft. We disagree in both respects.

Assuming that the determination does not depend on factual findings, *Graves*, 253 Mich App at 503, the issue of the duty of care in premises liability actions is a question of law for the trial court to decide, *Burnett v Bruner*, 247 Mich App 365, 368; 636 NW2d 773 (2001). A plaintiff may only maintain a premises liability action if the defendant owed a legal duty to the plaintiff. *Burnett*, 247 Mich App at 368. In premises liability actions, the duty owed by the landowner is determined by the plaintiff's status at the time of injury. *Id*. at 369.

In *Preston v Sleziak*, 383 Mich 442, 453; 175 NW2d 2d 759 (1970), overruled in part on other grounds by *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591; 614 NW2d 88 (2000), our Supreme Court adopted Section 342 of the Restatement of Torts (Second Edition) in describing the duty a landowner owes to a licensee on his or her land. Section 342 provides:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved. [2 Restatement Torts, 2d, § 342.]

A landowner does not have a duty to his licensees to repair or inspect his property; "[r]ather, the landowner simply owes the licensee a duty to warn of unreasonably dangerous conditions, when the licensee neither knows nor has reason to know of the condition and the risk involved." *Burnett*, 247 Mich App at 372.

Plaintiff argues that these elements do not require proof that defendants knew or should have known that she would encounter the condition that caused the injury, i.e., that she would be in the hayloft. We disagree. This Court has cited with approval the commentary to Section 342

in resolving issues regarding the duty owed to licensees. See *id*. at 371-372, citing 2 Restatement Torts, 2d, § 342, comments *d-f*. Comment *h* to Section 342 states in relevant part:

> A possessor of land who permits licensees to enter is subject to liability for bodily harm caused to them by the dangerous state in which he permits a natural or artificial condition to remain, if, but only if, he not only knows of the condition but also should realize that it involves an unreasonable risk of causing physical harm to the *particular licensee* harmed thereby. [Emphasis added.]

In other words, a landowner has a duty to warn a licensee of a hazard "only if he may be expected to encounter it in the exercise of his license." *Id*. To hold otherwise would, as defendants point out, require a landowner to list *all* hazards unknown to licensees anywhere on the property merely because it is physically possible that a licensee might encounter them. But a landowner only has a duty to warn a licensee if a condition exists that is "an unreasonable risk of harm to *such licensees*." 2 Restatement Torts, 2d, § 342.

The trial court made clear that the issue was whether defendants knew or should have known that the railing was unreasonably dangerous *to plaintiff*, which in turn involved whether defendants knew or should have known that she would be in the hayloft and would encounter the railing. We conclude that the trial court did not err in its articulation of the legal standard at issue in the determination of the duty owed by defendants to plaintiff.

Further, we agree with the trial court that plaintiff did not raise a genuine issue of material fact concerning this issue. Even taking the evidence in the light most favorable to the nonmovant, *Liparoto Constr*, 284 Mich App at 29, the record is clear that plaintiff had never taken several of the actions that she took that morning, including going to the barn on her own to determine whether the horses had been fed, deciding to give hay to Sally, and deciding to retrieve hay from the hayloft upon finding the ground-floor hay receptacle empty. Plaintiff admitted at her deposition that she had never even seen anyone drop hay from the hayloft into the riding arena for Sally (P Dep, 65). And although she had gone into the hayloft once before to store personal items,[6] plaintiff admitted that she had only gone to the "back of the loft" and had not encountered the railing. Further, Kevin stated at his deposition that he was aware of the nature of the railing, but had not told plaintiff about it because she had no responsibilities that involved the hayloft and he "wouldn't assume that she would be up there." In fact, Kevin agreed that it seemed "weird" to him that plaintiff was in the hayloft on the day of her fall. No one directed plaintiff to feed the horses or to retrieve hay that morning.

In sum, there is no genuine issue of material fact regarding whether defendants knew or should have known that plaintiff would encounter the railing. She had only entered the hayloft once before her fall, and had never gone near the railing; further, because her personal items had been moved, defendants had no reason to suspect that she might return to the hayloft for the

---

[6] Plaintiff testified that Kevin and her son later removed the personal items from the hayloft and stored them in the rafters of the barn.

reason that had brought her there first time. And plaintiff had been given no responsibilities involving the hayloft; even her husband assumed that she would not be there, and that he therefore did not need to warn her about the nature of the railing. Finally, defendants had no reason to suspect that plaintiff would decide to give hay to Sally despite having never done so before, and having never even seen it done. The trial court did not err by granting summary disposition in favor of defendants under MCR 2.116(C)(10).

Affirmed. As the prevailing party, defendants may tax costs. MCR 7.219(A).[7]


/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola

---

[7] Because we affirm the trial court on the grounds stated in its opinion, we decline to address defendants' argument that alternate grounds for affirmance exist because the trial court should have declared plaintiff to be a trespasser. Although defendants urge us to declare that the trial court's reasoning in declaring plaintiff a licensee is contrary to established case law and public policy, defendant has not filed a cross-appeal on this issue. See MCR 7.207.