LIPAROTO CONSTRUCTION, INC v GENERAL SHALE BRICK, INC

Docket No. 282920. Submitted May 13, 2009, at Detroit. Decided May 21, 2009, at 9:00 a.m.

Liparoto Construction, Inc., brought an action in the Wayne Circuit Court against General Shale Brick, Inc., Lincoln Brick & Stone, and State Auto Property & Casualty Insurance Company, alleging breach of contract and breach of warranties related to the discoloration of bricks on a home that the plaintiff constructed. The court, Kathleen Macdonald, J., granted Lincoln Brick summary disposition on the ground that the plaintiff's action was barred by a one-year contractual limitations period. The court granted General Shale summary disposition after concluding that there was no genuine issue of material fact regarding whether the discoloration was caused by the plaintiff's misuse. The court also granted State Auto summary disposition. The plaintiff appealed.

The Court of Appeals *held*:

1. An unambiguous contractual provision for a shortened period of limitations must be enforced as written unless the provision violates the law or public policy or is otherwise unenforceable under traditional contract defenses, including duress, waiver, estoppel, fraud, or unconscionability. For a contract or a contractual provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists when the weaker party had no realistic alternative to accepting the provision. Substantive unconscionability exists when the challenged provision is not substantively reasonable. A provision is not substantively unconscionable simply because it is foolish for one party or very advantageous to the other. A provision is substantively unreasonable if its inequity is so extreme as to shock the conscience.

2. The trial court did not err by granting summary disposition to Lincoln Brick. The plaintiff presented no evidence supporting its assertion that the contractual limitations period was procedurally unconscionable. For example, the plaintiff did not offer evidence that it was unable to purchase the brick from another supplier or that Lincoln Brick was unwilling to provide the brick under different terms. The plaintiff also failed to establish that the

provision was substantively unconscionable on the ground of its allegation that the defect in the brick was undetectable for several months. In fact, the plaintiff became aware of the problem within the one-year period. Applying the doctrine of equitable tolling to a contractual limitations period such as this would be inconsistent with the deference afforded to the parties' freedom of contract, including the freedom to avoid by contract what might otherwise be an applicable rule of law.

3. The trial court did not err by granting General Shale summary disposition. There was no genuine issue of material fact that improper cleaning with acid caused the discoloration. The plaintiff did not dispute the cleaning, but questioned whether cleaning instructions were attached to the bricks. Unsworn statements, such as those offered by the plaintiff, however, are not sufficient to create a genuine issue of material fact to oppose summary disposition.

4. Summary disposition under MCR 2.116(C)(10) is generally premature if discovery has not been completed unless there is no fair likelihood that further discovery will yield support for the position of the party opposing the motion. Summary disposition for Lincoln Brick and General Shale was not premature.

5. State Auto's policy provided coverage for bodily injury and property damage caused by an occurrence, which the policy defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In the context of this and similar definitions, damage resulting from negligence or a breach of warranty would constitute an occurrence triggering the policy's liability coverage only if the damage in question extended beyond the insured's work product, which was not the case here.

Affirmed.

1. LIMITATION OF ACTIONS — CONTRACTUAL LIMITATIONS PROVISIONS — DEFENSES TO CONTRACT ACTIONS — UNCONSCIONABLE CONTRACT PROVISIONS.

An unambiguous contractual provision for a shortened period of limitations must be enforced as written unless the provision violates the law or public policy or is otherwise unenforceable under traditional contract defenses, including duress, waiver, estoppel, fraud, or unconscionability; for a contract or contractual provision to be considered unconscionable, both procedural and substantive unconscionability must be present; procedural unconscionability exists when the weaker party had no realistic alternative to accepting the provision; substantive unconscionability exists when the challenged provision is not substantively reason-

able, but a provision is not substantively unconscionable simply because it is foolish for one party or very advantageous to the other; a provision is substantively unreasonable if its inequity is so extreme as to shock the conscience.

2. INSURANCE — COVERAGE UNDER INSURANCE POLICIES — OCCURRENCES OR ACCIDENTS TRIGGERING INSURANCE COVERAGE — NEGLIGENCE — BREACH OF WARRANTY.

 In the context of an insurance policy providing coverage for bodily injury and property damage caused by an occurrence, which the policy defines as "an accident," damage resulting from negligence or a breach of warranty would constitute an occurrence triggering the policy's liability coverage only if the damage in question extended beyond the insured's work product.

*Lyden, Liebenthal & Chappell, Ltd* (by *Erik G. Chappell*), for Liparoto Construction, Inc.

*Law Offices of John Colucci* (by *John G. Colucci*) for General Shale Brick, Inc.

*Kreis, Enderle, Callander & Hudgins* (by *Raymond C. Schultz*) for Lincoln Brick & Stone.

*Law Office of David C. Anderson, P.C.* (by *David Carl Anderson*), for State Auto Property & Casualty Insurance Company.

Before: BANDSTRA, P.J., and OWENS and DONOFRIO, JJ.

PER CURIAM. Plaintiff, Liparoto Construction, Inc., appeals as of right two trial court orders, one order granting summary disposition in favor of defendants General Shale Brick, Inc., and Lincoln Brick & Stone and the other order granting summary disposition in favor of defendant State Auto Property & Casualty Insurance Company, both pursuant to MCR 2.116(C)(10). Because the trial court correctly concluded that plaintiff's action against Lincoln Brick was barred by a contractual one-year limitations period and that General Shale was entitled to summary

disposition because there was no genuine issue of material fact that improper cleaning was the cause of the discoloration of the bricks involved in this case, we affirm summary disposition in favor of Lincoln Brick and General Shale. Further, because there was no genuine issue of material fact with respect to whether plaintiff's loss arose from an "occurrence" within the meaning of the policy, and plaintiff's loss was also subject to policy exclusions, summary disposition in favor of State Auto was also proper. We affirm.

### I. UNDERLYING FACTS AND PROCEDURAL HISTORY

Plaintiff, a general contractor, contracted to build a house for Dorothy and Clayton Ainscough. Plaintiff built the brick exterior of the house with Sonora brick it purchased from Lincoln Brick. General Shale manufactured the Sonora brick. After plaintiff completed the brickwork in early 2006, the Ainscoughs reported that the bricks had become discolored and that the problem worsened when the bricks were wet. General Shale determined that the bricks became discolored because their lime-coating reacted with an acid cleaner that a contractor used postmanufacturing, contrary to General Shale's explicit cleaning instructions. In December 2006, the Ainscoughs brought an administrative complaint against plaintiff with the Department of Consumer and Industry Services (now the Department of Energy, Labor, and Economic Growth). Plaintiff contacted its business liability insurer, State Auto, whose investigator concluded that the problem was attributable to a latent defect that occurred during manufacturing or warehousing. State Auto denied plaintiff's claim for coverage. Plaintiff thereafter entered into a mediation agreement with the Ainscoughs in which plaintiff agreed to undertake the necessary actions to correct the stained brick.

Plaintiff thereafter brought this action against defen-
dants, alleging claims for breach of implied warranty of
merchantability and breach of implied warranty of
fitness for a particular purpose against General Shale
and Lincoln Brick and claims for breach of contract
against Lincoln Brick and State Auto. The trial court
granted summary disposition in favor of Lincoln Brick
on the ground that plaintiff's action was barred by a
one-year contractual limitations period and in favor of
General Shale on the ground that there was no genuine
issue of material fact that the discoloration of the brick
was caused by plaintiff's misuse. State Auto argued that
it was entitled to summary disposition because the
discoloration of the bricks did not constitute an "occur-
rence" within the meaning of its policy or, alternatively,
was expressly excluded from coverage. State Auto also
argued that plaintiff violated the policy by voluntarily
entering into a mediation agreement with the Ain-
scoughs without its consent. The trial court granted
summary disposition in favor of State Auto, stating that
the insurance policy was not "a bond to secure that
[plaintiff's] work is [done] properly." Plaintiff now
appeals as of right.

## II. STANDARD OF REVIEW

This Court reviews a trial court's summary disposi-
tion decision de novo. *Reed v Breton*, 475 Mich 531, 537;
718 NW2d 770 (2006). A motion under MCR
2.116(C)(10) tests the factual sufficiency of a complaint.
*Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713
NW2d 717 (2006). The court must consider the affida-
vits, pleadings, depositions, admissions, and other docu-
mentary evidence submitted by the parties in the light
most favorable to the party opposing the motion. *Reed,
supra* at 537. The motion is properly granted if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

### III. LINCOLN BRICK

Plaintiff argues that the trial court erred by granting summary disposition in favor of Lincoln Brick on the ground that the action was barred by the one-year contractual limitations period set forth in Lincoln Brick's invoice. Under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*, the purchaser of defective goods seeking to recover for economic loss and incidental and consequential damages must bring its action for recovery against the seller within four years of tender and delivery of the goods. MCL 440.2725; *Home Ins Co v Detroit Fire Extinguisher Co, Inc,* 212 Mich App 522, 526-527; 538 NW2d 424 (1995). However, parties to a contract may agree to a shortened period of limitations. An unambiguous contractual provision providing for a shortened limitations period is to be enforced as written unless the provision violates the law or public policy or is otherwise unenforceable under traditional contract defenses, including duress, waiver, estoppel, fraud, or unconscionability. *Clark v DaimlerChrysler Corp,* 268 Mich App 138, 141-142 & n 1; 706 NW2d 471 (2005). For a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. *Id.* at 143. "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term." *Id.* at 144. "Substantive unconscionability exists where the challenged term is not substantively reasonable." *Id.* However, a contract or contract provision is not substantively unconscionable simply because it is foolish for one party or very advantageous to the other. *Id.* "Instead, a term is substantively unreasonable

where the inequity of the term is so extreme as to shock the conscience." *Id.*

While plaintiff asserts that the contractual limitations period is procedurally unconscionable because it had no realistic alternative to acceptance of the term, plaintiff did not present any evidence in support of this assertion. For instance, plaintiff presented no evidence that it was unable to purchase the brick from another supplier or that Lincoln Brick was unwilling to provide the brick under different terms. Accordingly, plaintiff failed to establish a question of fact regarding procedural unconscionability.

Plaintiff also failed to establish that the one-year limitations provision was substantively unconscionable because the defect was not detectable for several months. The record reveals that the bricks were shipped in December 2004 and installed in early 2005. The record also shows that plaintiff became aware of the problem by summer 2005. Consequently, there is no support for plaintiff's argument that the alleged defect remained undetectable until it was too late to bring an action for relief. Under these circumstances, plaintiff has not shown that the one-year limitations provision shocks the conscience.

Plaintiff alternatively argues that equitable tolling should preclude Lincoln Brick from relying on the one-year contractual limitations period. Plaintiff did not raise an equitable tolling argument in the trial court. Accordingly, this issue is not preserved and is subject to review for plain error affecting plaintiff's substantial rights. *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 700; 630 NW2d 356 (2001).

Application of the doctrine of equitable tolling to contractual limitations periods would be inconsistent with the deference afforded to parties' freedom to con-

tract, including the freedom to avoid, by contract, what might otherwise be an applicable rule of law. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 510-511; 741 NW2d 539 (2007). Plaintiff's reliance on *Lewis v Detroit Automobile Inter-Ins Exch*, 426 Mich 93; 393 NW2d 167 (1986), and this Court's decision in *Ward v Rooney-Gandy*, 265 Mich App 515, 519-520; 696 NW2d 64 (2005), is misplaced because *Lewis* was overruled by *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 582-583, 586; 702 NW2d 539 (2005), and this Court's decision in *Ward* was summarily reversed in *Ward v Rooney-Gandy*, 474 Mich 917 (2005). Accordingly, the trial court did not err by granting summary disposition in favor of Lincoln Brick on the basis of the contractual limitations period.

## IV. GENERAL SHALE

The trial court granted summary disposition for General Shale on the ground that there was no question of fact that the brick discoloration was caused by improper acid cleaning, for which General Shale was not at fault. General Shale submitted an affidavit from its engineering manager, James Bryja, indicating that a "cube tag" (which provides product information and cleaning instructions) is affixed to every package of bricks. An exemplar of the cube tag in use for Sonora bricks in 2005 was submitted with Bryja's affidavit. The cube tag contains the notation "CLEANING CATEGORY C" and includes cleaning information for categories A, B, and C. This information states that category C bricks should be cleaned with a nonacidic detergent because the acid-reactive coating is subject to color range changes if exposed to acid. The cube tag also states "GENERAL SHALE DISCLAIMS ANY AND ALL RESPONSIBILITY FOR DAMAGES RESULTING FROM CLEANING METHODS AND MATERIALS." General Shale's plant manager, Michael Baker,

stated in his affidavit that he examined the bricks and determined that they had been cleaned with acid. Tony Martinez of Tony's Caulking admitted that his company used an acid-based cleaner on the bricks. The Ainscoughs also stated in their administrative complaint against plaintiff that they saw the brick cleaners use a product that was labeled "acid."

Indeed, plaintiff does not dispute that the bricks were cleaned with an acid. Rather, plaintiff questions whether the cube tag was actually attached to the bricks. But plaintiff did not submit any evidence showing a genuine issue of material fact with respect to this issue. Plaintiff contends that it established a question of fact regarding the cause of the discoloration by providing a copy of a report prepared for State Auto by a forensic engineer, Joseph Czajka, that stated that the color variation occurred at the factory or warehouse before arrival on the job site. However, unsworn statements, such as Czajka's report, are not sufficient to create a genuine issue of material fact to oppose summary disposition under MCR 2.116(C)(10). *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 321; 575 NW2d 324 (1998). Accordingly, the trial court did not err by finding that there was no genuine issue of material fact that the brick discoloration was caused by improper acid cleaning and by granting summary disposition in favor of General Shale on that basis.

### V. WHETHER SUMMARY DISPOSITION WAS PREMATURE

Plaintiff argues that summary disposition in favor of Lincoln Brick and General Shale was premature because discovery was not yet complete. A motion under MCR 2.116(C)(10) is generally premature if discovery has not been completed unless there is no fair likelihood that further discovery will yield support for the non-

moving party's position. *Townsend v Chase Manhattan Mortgage Corp*, 254 Mich App 133, 140; 657 NW2d 741 (2002).

Summary disposition in favor of Lincoln Brick was based on the one-year contractual limitations period, which is not a matter that requires further factual development. Indeed, parol evidence is inadmissible to vary clear and unambiguous contractual language. *In re Kramek Estate*, 268 Mich App 565, 573-574; 710 NW2d 753 (2005). Accordingly, there is no fair likelihood that further discovery would yield support for plaintiff's action against Lincoln Brick.

Summary disposition in favor of General Shale was based on evidence that the brick discoloration was caused by improper cleaning, not by any latent defects. Plaintiff had the opportunity to determine the cause of the discoloration after the Ainscoughs first reported the problem and in the Ainscoughs' prior proceeding. Plaintiff also had the opportunity to obtain an affidavit from Czajka in order to present his expert opinion as admissible evidence. Similarly, plaintiff's own employees and subcontractors were in the best position to provide sworn statements regarding the packaging materials and labels that may or may not have been attached to the shipment of Sonora brick. Under the circumstances, plaintiff has not shown a fair likelihood that further discovery could enable plaintiff to establish a question of fact with respect to either the cause of the discoloration or the presence of the cube tag. For these reasons, plaintiff has failed to show that summary disposition was premature.

## VI. STATE AUTO

Plaintiff argues that the trial court erred by granting summary disposition in favor of State Auto on the ground that the discoloration was not an "occurrence"

within the meaning of its policy. An insurance policy is construed in accordance with Michigan's well-established principles of contract construction. *Citizens Ins Co v Pro-Seal Service Group, Inc*, 477 Mich 75, 82; 730 NW2d 682 (2007). The policy must be enforced according to its terms, and a court may not hold an insurer liable for a risk it did not assume. *Id.* A court may not create an ambiguity in a policy if the terms are clear and unambiguous, and the failure to define a relevant term does not render the policy ambiguous. *Id.* at 82-83. Rather, reviewing courts must interpret the terms of the policy in accordance with their commonly used meanings. *Id.* at 83.

State Auto's policy provides coverage for bodily injury and property damage caused by an "occurrence." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The parties address three cases involving definitions of "occurrence" and "accident" in the context of property damage arising from the use of defective products.

In *Bundy Tubing Co v Royal Indemnity Co*, 298 F2d 151 (CA 6, 1962), several persons brought actions against the insured, a manufacturer of steel tubing that was installed in floors and used to heat buildings, alleging that defective tubing caused substantial property damage. The insured's liability insurance carrier denied coverage for defense and indemnification costs on the ground that the lawsuits involved claims for breach of warranty and the underlying incidents were not caused by accidents. *Id.* at 152-153. The United States Court of Appeals for the Sixth Circuit disagreed and concluded that defective equipment caused substantial damage to the customers' homes. *Id.* at 153.

In *Hawkeye-Security Ins Co v Vector Constr Co*, 185 Mich App 369; 460 NW2d 329 (1990), the insured was a concrete contractor on a construction project. The insured incurred the cost of removing and replacing concrete after the concrete obtained from a supplier proved to be defective. *Id.* at 371-372. The insured presented a claim to its insurer pursuant to a policy that defined "occurrence" as " 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . . .' " *Id.* at 373. This Court held that the installation of defective concrete was not an "occurrence" within the meaning of the policy. The Court distinguished *Bundy* as follows:

> We find Vector's reliance on *Bundy* misplaced. *Bundy* stands for nothing more than the proposition that an insurer must defend and may become obligated to indemnify an insured under a general liability policy of insurance that covers losses caused by "accidents" where the insured's faulty work product damages the property of others. In the instant case Vector seeks what amounts to recovery for damages done to its own work product, and not damage done to the property of someone other than the insured. [*Id.* at 377.]

This Court in *Radenbaugh v Farm Bureau Gen Ins Co of Michigan*, 240 Mich App 134; 610 NW2d 272 (2000), further clarified the distinction between *Bundy* and *Hawkeye-Security* in the context of an "accident" as it relates to a contractor's losses arising from a subcontractor's defective products. In *Radenbaugh*, the insured, a mobile home dealer, provided erroneous schematics and instructions to the contractors who constructed the mobile home's basement foundation. These errors caused substantial damage to the home and its basement. *Id.* at 136. The insurer denied the

insured's claim for defense and indemnification cover-
age on the ground that the loss did not constitute an
occurrence within the meaning of the policy, which
defined "occurrence" as " 'an accident, including con-
tinuous or repeated exposure to substantially the same
general harmful conditions.' " *Id.* at 140. This Court
rejected the insurer's reliance on *Hawkeye-Security,
supra,* in support of its application of the term "occur-
rence" and distinguished *Hawkeye-Security* as follows:

> Were the underlying complaint limited to claims relat-
> ing solely to the insured's product, we would agree with
> defendant. However, it is clear that the underlying com-
> plaint alleged damages broader than mere diminution in
> value of the insured's product caused by alleged defective
> workmanship, breach of contract, or breach of warranty.
> [*Id.* at 141.]

The Court considered the extensive damage to the
buyers' home, all of which resulted from the insured's
erroneous instructions. *Id.* at 141-142. The Court con-
trasted the factual circumstances in *Hawkeye-Security,*
in which the Court held " 'that the defective workman-
ship of Vector, *standing alone,* was not the result of an
occurrence within the meaning of the insurance con-
tract.' " *Radenbaugh, supra* at 143, quoting *Hawkeye-
Security, supra* at 378 (emphasis in *Radenbaugh*). The
Court also discussed the distinction between *Hawkeye-
Security* and *Bundy,* stating: "In *Bundy,* the insured's
defective workmanship caused damage to the property
of others. The property damage that was not confined to
the insured's own work product was deemed to be
" 'unforeseen, unexpected, and unintended and there-
fore an occurrence.' " *Radenbaugh, supra* at 144.

The *Radenbaugh* Court also emphasized that in
*Bundy,* the Sixth Circuit "rejected defendant's argu-
ment that an occurrence cannot arise based on the

insured's negligence or breach of warranty." *Id.* Rather, the court in *Bundy* had recognized that claims involving breach of warranty or negligence could constitute an accident. *Id.* This Court indicated that such claims constitute an accident when "the underlying action alleged more than damage to the insured's own product." *Id.* This condition was satisfied in *Radenbaugh* because the insured's faulty instructions rendered the basement unusable. *Id.* at 144-145.

The *Radenbaugh* Court also extensively quoted *Calvert Ins Co v Herbert Roofing & Insulation Co*, 807 F Supp 435 (ED Mich, 1992), a case harmonizing *Hawkeye-Security* and *Bundy*. The court in *Calvert* held that these two cases " 'can be reconciled by focusing on the property damage at issue in each case.' " *Radenbaugh, supra* at 147, quoting *Calvert, supra* at 438. The key distinction was that in *Bundy*, " 'the insured's defective workmanship resulted in damage to the property of others,' " whereas in *Hawkeye-Security* " 'the insured's defective workmanship resulted only in damage to the insured's work product.' " *Radenbaugh, supra* at 147, quoting *Calvert, supra* at 438. The *Radenbaugh* Court adopted this reasoning as its own and concluded that the damage to the mobile home constituted an "occurrence" as defined by the subject policy. *Radenbaugh, supra* at 148.

In this case, "occurrence" is defined in the same manner as it was defined in *Radenbaugh*. The definition of "occurrence" in *Hawkeye-Security* is more detailed, but is not significantly different in substance. This Court in *Radenbaugh* held that damage resulting from negligence or breach of warranty would constitute an occurrence triggering the policy's liability coverage only if the damage in question extended beyond the insured's work product. Here plaintiff did not allege,

and presented no evidence, that there was damage beyond its own work product. Accordingly, the trial court did not err by concluding that plaintiff failed to establish an occurrence within the meaning of the policy.[1]

Affirmed. Defendants may tax costs.

---

[1] On appeal, plaintiff also argues that all three defendants were not entitled to summary disposition under additional grounds that defendants raised before the trial court. In light of our conclusions that the trial court properly granted summary disposition for each defendant for the reasons discussed in this opinion, it is unnecessary to consider these alternative grounds.