# STATE OF MICHIGAN

# COURT OF APPEALS

MANDELL HOLLINGS,

      Plaintiff-Appellant,

v

GRANGE INSURANCE COMPANY OF
MICHIGAN,

      Defendant,

and

SCOTT O'BRIEN,

      Defendant-Appellee.

UNPUBLISHED
May 8, 2018

No. 339316
Wayne Circuit Court
LC No. 16-006003-NI

Before: BORRELLO, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting summary disposition to defendant, Scott O'Brien,[1] in this no-fault action. We reverse and remand for further proceedings consistent with this opinion.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

This case arises out of an incident on May 15, 2013, where plaintiff was struck by defendant's truck and injured. While plaintiff was attempting to cross a residential street, he heard defendant's truck coming, and leaned against a nearby van. Despite plaintiff's efforts to get out of the way, defendant "nicked" plaintiff, striking him with the side of his truck before crashing into a Chevrolet Impala parked nearby.

---

[1] Defendant Grange Insurance Company of Michigan has been dismissed and is not party to this appeal. Accordingly, all future mentions of "defendant" refer to defendant Scott O'Brien.

-1-

Plaintiff immediately complained of pain in his right side and stomach, and was taken by a friend to Detroit Receiving Hospital. Emergency room doctors performed x-rays, and determined that plaintiff had grade 1 retrolisthesis, which was defined as "the backward slippage of one vertebra onto the other vertebra immediately below, in his lumbar spine." Further, doctors determined plaintiff was suffering from a straightening of the cervical lordosis. Plaintiff was discharged with instructions to follow up.

Approximately one week later, plaintiff saw Dr. Marvin Bleiberg, and complained of back pain, neck pain, shoulder pain, and knee pain. Plaintiff represented that he could not perform any household activities, could not bend over, and could not sit or stand for any length of time. After a physical examination, Dr. Bleiberg determined plaintiff was suffering from a limited range of motion in his neck and back, and further had sustained a cervical sprain/strain, lumbar strain/sprain, lumbosacral radiculitis, shoulder pain, hip pain, limb pain, myofascitis, acute pain due to trauma, muscle spasms, and insomnia. Further testing, namely an MRI, confirmed that plaintiff was suffering from a straightening of the cervical lordosis, a lumbar annular disc bulge and small disc protrusion over L4-L5 and L5-S1. An MRI of plaintiff's knee further revealed that he had sustained a complex tear of the posterior horn over the medial meniscus in the right knee, and a posterior horn meniscal tear and mild chondromalacia of the patellofemoral joint in his left knee. Dr. Bleiberg prescribed pain medication and topical ointment, injections, chiropractic care and physical therapy, medical transportation services, case management services, household replacement services, and a brace for plaintiff's lumbar spine injuries.

At the request of Grange Insurance Company of Michigan, plaintiff submitted to an independent medical examination (IME) performed by Dr. Neil Friedman. Dr. Friedman examined plaintiff in person, and also reviewed plaintiff's medical records from Dr. Bleiberg and his chiropractor. Dr. Friedman found that plaintiff was suffering from minimal disc protrusion and mild diffuse degenerative changes in his spine, but found no abnormality appearing to be the result of any trauma.

Plaintiff submitted to a second IME arranged by his own counsel. Dr. Michael Zydeck performed the second IME. Dr. Zydeck reviewed plaintiff's medical records, and based on plaintiff's MRI, determined that plaintiff was suffering from posterior disc bulges at L4-L5 and L5-S1, as well as disc protrusions at C4-C5 and C5-C6. Dr. Zydeck claimed that the posterior disc bulges at L4-L5 and L5-S1 were degenerative, but did not comment on the cause of the disc protrusions at C4-C5 and C5-C6.

Immediately after the accident, plaintiff's wife assisted him with cooking, cleaning, doing laundry, grocery shopping, bathing, and applying his topical pain reliever. Plaintiff also had to hire a service to cut his grass and remove snow. However, as of June 2014, plaintiff's injuries had improved. Although plaintiff still complained of occasional back pain and knee stiffness, he could essentially perform all of his normal activities, unless he was in too much pain.

On May 12, 2016, plaintiff filed suit against defendant, claiming that defendant had operated his vehicle carelessly and without regard to plaintiff's safety. In response, defendant asserted that plaintiff's claim was barred under the no-fault act, and that plaintiff had not actually suffered a serious impairment of a bodily function. Defendant moved for summary disposition,

arguing that plaintiff was unable to satisfy the first and third prong of the test laid out by our Supreme Court in *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). Specifically, defendant argued that plaintiff's neck and knee injuries had not resulted from the accident, and that his back injuries were not objectively manifested impairments. Defendant relied on the fact that Dr. Bleiberg had diagnosed plaintiff's back injuries before looking at any diagnostic imaging, and that both Dr. Friedman and Dr. Zydeck had concluded that plaintiff's back injuries were degenerative conditions, and not due to any trauma. Defendant also argued that plaintiff was unable to show that any injury had affected his general ability to lead a normal life, given that before the accident, plaintiff was limited in his activities.

Following a hearing on defendant's motion, the trial court concluded that there was no objective evidence that plaintiff had sustained any injuries in the accident, and further, that the accident had not affected plaintiff's general ability to lead his normal life. Accordingly, it granted summary disposition in favor of defendant. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision regarding a motion for summary disposition de novo. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). A motion for summary disposition brought under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint," *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016) (citation omitted), and should be granted where "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

"The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). The court must consider all of the admissible evidence in a light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). However, the party opposing summary disposition under MCR 2.116(C)(10) "may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Oliver v Smith*, 269 Mich App 560, 564; 715 NW2d 314 (2006) (citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014) (citation and quotation marks omitted).

## III. ANALYSIS

On appeal, plaintiff challenges the trial court's grant of summary disposition in favor of defendant. Specifically, plaintiff challenges the trial court's determination that he failed to make a threshold showing that he had suffered a serious impairment of a bodily function, and therefore, defendant was not entitled to summary disposition in his favor.

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death,

serious impairment of a body function, or permanent serious disfigurement." MCL 500.3135(1). MCL 500.3135(5) defines a "serious impairment of a body function" as an "objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." In *McCormick*, our Supreme Court opined that when a trial court is determining whether a plaintiff has made a sufficient showing of a threshold injury to survive summary disposition:

> the [trial] court should determine whether there is a factual dispute regarding the nature and extent of the person's injuries and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met. If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court. [Citations omitted.]

"Whether someone has suffered a serious impairment is 'inherently fact- and circumstance-specific and [the analysis] must be conducted on a case-by-case basis.' " *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011), quoting *McCormick*, 487 Mich at 215.

Although a serious impairment need not be permanent, a plaintiff must be able to show that he or she sustained:

> (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of plaintiff's capacity to live in his or her normal manner of living). [*Id*. at 215.]

As this Court explained in *Nelson v Dubose*, 291 Mich App 496, 498-499; 806 NW2d 333 (2011):

> *McCormick* shifted the focus from the injuries themselves to show how the injuries affected the plaintiff's body function. *McCormick*, 487 Mich at 197. This shift eased the burden on the plaintiff to show how the impairment prevented the plaintiff from leading a normal life. Now, the plaintiff has to show that the plaintiff's ability to lead a normal life has been affected by comparing the plaintiff's life before and after the injury. *Id*. at 200, 202-203.

The no-fault act permits a trial court to rule as a matter of law regarding whether a plaintiff has suffered a serious impairment of body function if it finds either of the following:

> (i) There is no factual dispute concerning the nature and extent of the person's injuries.

> (ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person

has suffered a serious impairment of body function . . . . [MCL 500.3135(2)(a)(i), (ii).]

There is a genuine issue of material fact "when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014) (citation and quotation marks omitted).

In this case, the trial court ruled that there was no genuine issue of material fact as to whether plaintiff suffered a serious impairment of body function. The trial court did not believe plaintiff had suffered a serious impairment of body function because plaintiff admitted that he was essentially able to perform all the activities that he had prior to the accident, and the independent medical examiner's report found no objective evidence of any injury. Thus, the trial court found that plaintiff failed to establish the first and third prongs of the *McCormick* test. Plaintiff challenges both findings.

First, with respect to the first prong of the *McCormick* test, plaintiff maintains that he has sufficiently demonstrated objectively manifested impairments. Giving the benefit of reasonable doubt to plaintiff, the record before us demonstrates that at minimum, "there appears to be a genuine dispute whether the objectively manifested abnormalities" in plaintiff's spine, neck, and knee are degenerative injuries or traumatic injuries. *Chouman*, 293 Mich App at 444. Accordingly, the trial court erroneously concluded as a matter of law that plaintiff had failed to establish he had suffered an objectively manifested impairment.

Shortly after the accident, Dr. Bleiberg diagnosed plaintiff with a cervical sprain/strain, lumbar sprain/strain, lumbosacral radiculitis, shoulder pain, hip pain, limb pain, myofascitis, acute pain due to trauma, muscle spasms, and insomnia. Dr. Bleiberg first based his diagnoses only on a physical examination, but he maintained his original diagnoses after performing diagnostic imaging, namely an MRI and EMG. Additionally, plaintiff's MRIs showed a complex tear of the posterior horn of the medial meniscus with extension toward the root in plaintiff's right knee, and a posterior horn meniscal tear and mild chondromalacia of the patellofemoral joint in his left knee. Dr. Bleiberg believed that plaintiff's injuries were sustained in the accident. On the other hand, Dr. Friedman and Dr. Zydeck, who performed IMEs on plaintiff, believed that his injuries were from degenerative conditions. When all three doctor's opinions are viewed together, it is clear that a genuine issue of material fact concerning the nature and extent of plaintiff's injuries exist. The trier of fact need not accept Dr. Bleiberg's, Dr. Friedman's, or Dr. Zydeck's conclusions, however, because there "is a genuine question of fact concerning the nature and extent of [plaintiff's] injuries, the threshold question of whether [plaintiff] suffered a 'serious impairment of a body function' may not be decided as a matter of law." *Chouman*, 293 Mich App at 444. Therefore, the trial court committed error requiring reversal by determining, as a matter of law, that plaintiff had failed to establish that he had suffered an objectively manifested impairment.

Second, with respect to the third prong of the *McCormick* test, plaintiff argues that the trial court erroneously concluded that he had not shown that an objectively manifested impairment had affected his general ability to lead his normal life. We agree.

Admittedly, plaintiff's lifestyle prior to the accident was somewhat limited due to disability. Plaintiff's testimony established that prior to the accident, he used to do yard work, play sports with his children, shop for groceries, and maintain his home. After the accident, plaintiff's wife had to do plaintiff's housework and grocery shopping for seven months. Plaintiff also had to pay someone to do his yard work for that time period. Plaintiff argues that although he has been able to resume normal activities, so long as he is not suffering from occasional recurring neck, back, or knee pain, for the seven months immediately following the accident, his objectively manifested injuries affected his ability to live *his* normal life.

There is no express temporal requirement in the *McCormick* test. *McCormick*, 487 Mich at 203. Despite acknowledging the seven-month period where plaintiff's ability to live his normal life was affected, the trial court concluded:

> Of course, after the accident his wife, from whom he separated, apparently performed attendant care for four hours a day, and did all of his cooking and cleaning, but that was part of his PIP claim which has been settled.

However, simply because the costs of attendant care would have been covered in plaintiff's PIP claim does not mean that a trial court can refuse to consider the initial severity of plaintiff's injuries when determining if plaintiff's ability to lead his normal life was affected by his injuries. Plaintiff's ability to live his normal life need not have been destroyed to satisfy the third prong of the *McCormick* test. *McCormick*, 487 Mich at 202. We conclude that when the record evidence is viewed in a light most favorable to plaintiff, it establishes that plaintiff's individual "capacity to live his pre-incident manner of living was affected, and the third prong of" the *McCormick* test is satisfied. *Id*. at 219.

Reversed and remanded for further proceedings consistent with this opinion. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Kathleen Jansen