*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILMINGTON SAVINGS FUND SOCIETY
FSB, CHRISTIANA TRUST, and SELENE
FINANCE,

        Plaintiffs-Appellees,

v

KEVIN SCOTT,

        Defendant-Appellant,

and

ANNETTE PAYTON-SCOTT, also known as
ANNETTE PAYTON and ANNETTE SCOTT, JP
MORGAN CHASE BANK, and the UNITED
STATES OF AMERICA,

        Defendants.

UNPUBLISHED
August 20, 2019

No. 344903
Oakland Circuit Court
LC No. 2017-161749-CH

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

In this judicial foreclosure action, defendant, Kevin Scott, appeals the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of plaintiffs, Wilmington Savings Fund Society FSB, Christiana Trust, and Selene Finance (referred collectively as Wilmington). On appeal, Scott argues that the trial court erred because he had made monthly mortgage payments directly to counsel representing his original lender, Bank of America, N.A. (BOA), as required by a federal court order from Scott's 2012 lawsuit against BOA. Scott claims he had submitted checks to counsel for BOA, Maddin Hauser, from 2013 to 2015. He argues that discovery was ongoing in this case, and because the federal court order was not yet available at the summary disposition hearing, the trial court erred when it concluded that there was not a fair likelihood that further discovery would yield support for Scott's position that he was current on his mortgage payments. Because Scott failed to make his mortgage payments, we affirm the trial court's decision to grant summary disposition in favor of Wilmington.

-1-

This case involves the judicial foreclosure of Scott's property located in Farmington Hills, Michigan. In April 2004, Scott and his wife obtained a 15-year mortgage in the amount of $285,000 through BOA. According to Scott's BOA payment history, he made regular monthly payments from 2004 through the end of 2010 before missing his monthly payment in January 2011. From 2011 on, Scott continued a pattern of being a month behind, catching up, and then falling back behind. However, from February 2012 to July 2012, Scott did not make any payments. After six months of missed payments, BOA commenced foreclosure proceedings.

At that same time, Scott also filed a federal lawsuit in the Eastern District of Michigan in 2012 alleging breach of contract. In January 2013, the federal court entered an order adopting the report and recommendation of the magistrate judge and denying Scott's motions for injunctions and clarifying a previous order.[1] According to the federal court order, Scott had filed a *pro se* complaint alleging breach of contract related to the processing of his mortgage. Scott was attempting to avoid foreclosure, claiming his payments on his mortgage either had not been credited or had been misapplied. The federal court ordered Scott to make future payments on the mortgage through BOA's counsel on or before the 25th day of each month before payment is due, and "[p]ayments so received will be deemed timely." The federal court also ordered Scott to pay $19,209.44 to reinstate the mortgage. On July 10, 2012, Scott paid the $19,209.44 to reinstate his mortgage.

According to Scott's BOA payment history, he did not make another payment until June 2015. Despite this payment history, Scott claimed he had been making monthly payments since 2013 by sending checks to BOA's counsel, Maddin Hauser. As proof, Scott submitted copies of checks made out to BOA, with the first check dated June 25, 2013. Scott sent monthly checks to Maddin Hauser's office that spanned from June 2013 to October 2015. Additionally, Scott submitted signed acknowledgements from persons at Maddin Hauser's office who acknowledged acceptance of the checks. There were 16 acknowledgements for payments made beginning in June 2013 and ending October 2014. There was no acknowledgement for July 2014 or any dates after October 2014, even though Scott asserts he had continued to submit checks until October 2015. There is no dispute that the checks were never deposited or applied to Scott's mortgage.[2]

In 2017, the mortgage was transferred from BOA to Wilmington, and this judicial foreclosure action was commenced shortly thereafter. On April 6, 2018, Wilmington filed its motion for summary disposition under MCR 2.116(C)(8), (C)(9), and (C)(10), seeking a default judgment of foreclosure on Scott's property. Wilmington claimed that there was no genuine issue of material fact that Scott was past due on his May 2013 mortgage payment, in addition to every mortgage payment thereafter. Further, Wilmington claimed that the checks that Scott

---

[1] This Court has entered an order expanding the record to include the federal court order. *Wilmington Savings Fund Society FSB v Scott*, unpublished order of the Court of Appeals, entered December 12, 2018 (Docket No. 344903).

[2] It is evident from the record that Scott commenced another federal lawsuit against BOA in 2016. In December 2017, a default judgment was entered in that case. The details of that case are not pertinent to the issues here.

submitted in his pleadings were not evidence that he had made payments because there was nothing indicating that those checks were ever negotiated. Wilmington also argued that Scott's affirmative defenses failed, and therefore, summary disposition was appropriate under MCR 2.116(C)(9). Scott filed a response and claimed that Wilmington filed its motion "prematurely as a predatory lender without any documentation, other than self-serving affidavits, in an egregious attempt to foreclose upon [Scott]." Scott's predominant argument was that he had produced "years of payments" that "clearly creates numerous issues of material fact and wholly defeats [Wilmington's] statement that any subsequent payment [past May 2013] has not been made." According to Scott, he was on track to have his entire mortgage paid in full before May 2019. Further, Scott argued that discovery was still open, and he was waiting on responses to interrogatories and requests to produce.

In May 2018, the trial court held a hearing on Wilmington's motion for summary disposition. Counsel for Wilmington argued that, after reinstatement of the mortgage in July 2012, Scott's last payment was May 2013. Around 2015, BOA had instituted foreclosure proceedings, which led to Scott's 2016 federal claim alleging a violation of the Fair Debt Collection Practices Act. In that case, Scott had presented the same evidence submitted in the current case—the copies of checks he allegedly submitted to BOA's counsel. Counsel for Wilmington explained that he was the attorney on the federal case, and after "exhaustive discovery," the only evidence Scott had was the checks sent to Maddin Hauser without any evidence that they were negotiated.

Counsel for Wilmington further explained that Maddin Hauser never sent those checks to BOA, and he was unsure as to why. Furthermore, counsel for Wilmington acknowledged that Scott claimed he was ordered by the federal court to make his checks out to BOA's counsel. However, counsel for Wilmington told the trial court that he had reviewed the PACER records for the 2012 and 2016 cases, and there was no such order entered. The trial court agreed and stated, "We didn't see that either. Yeah, we were looking."

Scott's attorney argued that because of the federal court order requiring payments to be submitted to BOA's counsel, the checks at least raised a genuine issue of material fact that Scott had made timely payments on his mortgage. The trial court, however, asked where the order was that required Scott to submit payment to Maddin Hauser. Scott's attorney explained, "Well, we have an order for a transcript from a telephone hearing when [the federal court] did require that. I don't have that at this point." He further said the federal court "told [Scott] to make checks during the pendency of that case to counsel for [BOA], which he did, and he did it in compliance with what the court ordered him to do." He further explained that discovery was ongoing and that Scott could present evidence that he was told by the federal court to submit his payments to BOA's counsel. However, the trial court asked why Scott did not call Maddin Hauser after he realized the checks were not being deposited. In response, Scott's attorney said, "He did what he was told to do and he did everything that he believed he should do."

In June 2018, the trial court issued its opinion and order granting Wilmington's motion for summary disposition under MCR 2.116(C)(9) and (C)(10). The trial court first concluded "there is no fair likelihood that further discovery would yield support for the non-moving party's position." Turning to the substantive argument, the trial court held that beginning in May 2013, Scott failed to make payments on his mortgage. The trial court explained:

No evidence has been produced to show that checks were cashed or deducted from an account or credited to his mortgage. Further, the copies of the checks, correspondence, and the ledger attached show that some of the checks were not written for the required amount and/or that Maddin Hauser returned some of the checks.

This appeal followed, and Scott again argues that the checks to Maddin Hauser at least raise a genuine issue of material fact that he made timely payments. Additionally, he argues that the trial court should have allowed for additional discovery so that he could show that the federal court had ordered him to make payments to BOA's counsel.

This Court reviews de novo rulings on a motion for summary disposition under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 469 (2003). In ruling on a motion under MCR 2.116(C)(10), a trial court may "consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

We conclude that the trial court did not err when it granted summary disposition under MCR 2.116(C)(10) on Wilmington's judicial foreclosure action.[3]

A foreclosure is a "legal proceeding to terminate a mortgagor's interest in property, instituted by the lender either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." *Black's Law Dictionary* (11th ed). Thus, a judicial foreclosure is a foreclosure "requiring many standard legal steps such as the filing of a complaint, service of process, notice, and a hearing." *Id*. Circuit courts have jurisdiction over foreclosure proceedings of real estate mortgages pursuant to MCL 600.3101. The issue in this case is straightforward—whether Scott has defaulted on his mortgage such that Wilmington is entitled to foreclose on the mortgage.

Scott first argues that he is current, having made all payments since the federal court ordered him to make mortgage payments to BOA's attorneys on the 25th of each month. Since then, he has submitted approximately 30 checks with Maddin Hauser that were made out to BOA in the amount of $2,888.89 each. The first check was submitted on June 25, 2013, and the last check he submitted was on October 25, 2015—just before Scott filed his second lawsuit in

---

[3] We acknowledge that the trial court also granted summary disposition under MCR 2.116(C)(9) as to Scott's affirmative defenses. However, because Scott does not challenge the trial court's ruling as to this issue, we do not address it on appeal.

federal court after BOA commenced foreclosure proceedings. We conclude that even if Maddin Hauser accepted each of the checks that Scott submitted, there simply has been no evidence presented to show that those checks were deposited and applied to Scott's mortgage sufficient to prove that he is current on his mortgage. The BOA payment history shows that Scott reinstated his mortgage in July 2012 by paying approximately $20,000 as required by the federal court. These payments were applied, and Scott was current on his mortgage payments as of July 2012. However, no other payment was made until 2015, and that payment was applied to the month of April 2013.

The record is clear that the checks from 2013 to 2015 submitted to Maddin Hauser were never deposited. Wilmington claims on appeal that the checks were not deposited because they failed to cover the full amount owed for the months of July, August, and September of 2012 as required by the federal court. Although the amount owed for those months was $3,102.07, the checks were written for $2,888.98. Pursuant to the mortgage, the lender could elect to reject partial payments. What is most revealing is that Scott continued to write checks without question, despite the fact that the checks were not being deposited and those payments were not being withdrawn from his bank account. Despite his admission that the payments were never credited to his mortgage, Scott argues that he is current, and the mortgage should be discharged because he has made every payment. This is simply not true. The last credited payment was made in December 2015, and it was applied to the April 2013 mortgage payment. Thus, Scott has not made any payment that could have been applied to his mortgage since May 2013. The trial court did not err when it concluded that Scott had defaulted on his mortgage and Wilmington was entitled to an order granting the judicial foreclosure.

Scott argues, however, that the trial court should not have granted summary disposition because discovery was ongoing. According to Scott, had the trial court been able to consider the federal court order, the outcome would have been different. We disagree.

"A motion under MCR 2.116(C)(10) is generally premature if discovery has not been completed unless there is no fair likelihood that further discovery will yield support for the nonmoving party's position." *Liparto Const, Inc*, 284 Mich App at 33-34. When opposing a motion under MCR 2.116(C)(10) based on the assertion that discovery is incomplete, the party must assert a factual dispute exists and provide independent evidence to support the allegation. *Bellows v Del McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). This Court reviews a trial court's decision concerning discovery for an abuse of discretion. *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 478; 608 NW2d 823 (2000).

In this case, the only discoverable evidence supporting Scott's assertion that there is at least a question of fact that he had made all payments as required is the 2013 federal court order. Scott argues that had the trial court allowed for additional discovery until the order was produced, the order would have presented a factual dispute as to whether Scott's payments to BOA's counsel would have been sufficient to prevent the foreclosure. However, even if the order was produced, it did not support Scott's position. Regardless of whether he made payments to Maddin Hauser, the fact remained that the checks were not deposited, and Scott did nothing to ensure that those payments were made for approximately two years until foreclosure proceedings commenced. Scott's claim that there is at least a question of whether the payments were made simply because the checks were presented to BOA's counsel fails because the

-5-

payments were never applied to the mortgage. Thus, the trial court did not abuse its discretion when it denied Scott's claim that ongoing discovery barred summary disposition.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron