*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATHAN CAMPAU, by Next Friend MICHAEL
CAMPAU,

UNPUBLISHED
August 6, 2020

Plaintiff-Appellant,

v

No. 347622
Oakland Circuit Court
LC No. 2018-163388-NO

TIMOTHY RENAUD, HEATHER RENAUD, and
TIMOTHY RENAUD,

Defendant-Appellees.

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent.

This case arises out of a youth soccer game. Plaintiff Nathan Campau was the goalkeeper for one team, and defendant Timothy Renaud[1] was a forward for the opposing team. A player on defendant's team "crossed" the ball into the goal area where plaintiff was positioned. Plaintiff came out to the edge of the six-yard goalie box to catch the ball. What happened next is disputed.

According to plaintiff's father, Michael Campau, plaintiff jumped about one foot into the air, caught the ball, and landed. Michael estimated that plaintiff had possession of the ball for one or two seconds before defendant ran into plaintiff's right side. Plaintiff also testified that he had possession of the ball before defendant ran into him as did plaintiff's coach, who testified that plaintiff had completed the catch and was standing on the ground holding the ball when defendant collided with him. Plaintiff was seriously injured by the collision and was transported to the hospital. He suffered a fractured femur and significant knee damage requiring multiple surgeries. Michael explained, "The knee was completely disconnected from the leg and the femur was—you

---

[1] Hereinafter, "defendant" refers to the minor, TJ Renaud, who was the actor at issue in this case. Timothy Renaud and Heather Renaud, TJ Renaud's parents, were voluntarily dismissed as parties by plaintiff in the lower court.

-1-

could see the edge of the femur on his skin." While multiple witnesses, some with years' of experience playing and coaching the game, testified that collisions are common in soccer, none could recall an injury of this magnitude.

Defendant was unharmed by the collision and able to finish the game. He testified that he was running to make a header to the goal, never saw plaintiff, jumped to make the header and collided with plaintiff in midair. He testified that plaintiff did not attempt to catch the ball but was instead trying to "punch it out" of the goal area. He admitted that he did not attempt to slow down or make any effort to avoid colliding with plaintiff. In contrast, the other two attacking players on defendant's team were able to stop and avoid colliding with plaintiff. Several witnesses testified that the collision was the result of a "50/50 ball," meaning that each player—until and unless the goalie had possession—had an equal chance of making a play on the ball.

The evidence just reviewed demonstrates that there are genuine issues as to material facts. Some evidence supports the conclusion that plaintiff and defendant were both leaping for a 50/50 ball, and other evidence supports the conclusion that plaintiff was standing on the ground in full and obvious possession of the ball for one to two seconds and that defendant, who was looking at the ball, continued to run directly at him at full speed with no effort to avoid collision.[2]

In reviewing motions for summary disposition under MCR 2.116(C)(10), courts "may not weigh evidence, make determinations of credibility, or otherwise decide questions of fact." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 346; 941 NW2d 685 (2019). "The court must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Thus, the question before us is whether the version of the events presented by plaintiff's evidence would allow a reasonable jury to conclude that defendant acted recklessly, i.e., he exhibited a "complete indifference toward the risk of injury." *Behar v Fox*, 249 Mich App 314, 320; 642 NW2d 426 (2001). I believe it would. Accordingly, I conclude that the trial court erred by granting summary disposition. It is a jury's job—not ours—to assess credibility, make factual findings, draw inferences from those findings and decide the ultimate issue in this case.

/s/ Douglas B. Shapiro

---

[2] The majority notes that defendant was not issued a red or yellow card for the collision. However, a referee's ruling on the field does not control whether recklessness occurred. See *Ritchie-Gamester v Berkley*, 461 Mich 73, 92-93; 597 NW2d 517 (1999). The referee testified that he could not recall the play and he merely assumed that because no cards were issued, one was not warranted. It is also possible that the issuance of foul cards was not a priority given that there was a seriously injured player needing immediate assistance.